(May 29, 1914.)

O. L. PEAVY, Respondent, v. GEORGE McCOMBS et al.,
Appellants.

[140 Pac. 965.]

ISSUANCE OF COUNTY BONDS TO REDEEM WARRANTS—STATUTES IN PARI
MATERIA PASSED AT SAME SESSION — CONSTRUCTION OF — RETRO-
ACTIVE STATUTE—PARTICULAR APPLICATION OF TO SECTION 99, CHAP.
58, SESSION LAWS 1913.

1.  ˙The rule that statutes *in pari materia* should be construed to-
gether applies with peculiar force to statutes passed at the same
session of the legislature; they are to be construed together, and
should be so construed, if possible, as to harmonize and give force
and effect to the provisions of each.

2.  Where two statutes passed at the same session of the legis-
lature are necessarily inconsistent, that one which deals with the
common subject matter in a more minute and particular way will
prevail over one of a more general character.

3.  Where two conflicting acts upon the same subject matter are
passed at the same session of the legislature, and their conflict is
such that they cannot be harmonized, and one of them contains an
emergency clause and the other does not, and the one containing the
emergency clause was passed by both Houses of the legislature and
approved by the governor later than the other, *held*, under the cir-
cumstances, the act containing the emergency clause repeals the
other to the extent of the inconsistency between them.

4.  No act of the legislature shall be construed to be retroactive
or retrospective unless the intention on the part of the legislature is
clearly expressed.    The word "retroactive" need not be used in the
statute, but the intent of the legislature may be gleaned from any
language which appropriately expresses such purpose.

5.  Sec. 99 of chap. 58 of Sess. Laws 1913 was passed in obedi-
ence to the mandate of sec. 15 of art. 7 of the constitution.    By

said provision the legislature declared its purpose to place the counties of the state upon a cash basis.

6. By sec. 99 of chap. 58 of Sess. Laws 1913, the power of the board of county commissioners to issue bonds for the payment or redemption of outstanding county warrants is abrogated. This applies to warrants which were issued before said law went into effect, as well as to warrants which were issued after it went into effect.

7. Sec. 99 of chap. 58 of Sess. Laws 1913 repeals sec. 1960 of the Rev. Codes as amended by chap. 33 of the Laws of 1913, so far as said sec. 1960 empowers the county commissioners to issue county bonds to pay or redeem outstanding warrant indebtedness.

APPEAL from the District Court of the Eighth Judicial District for Bonner County. Hon. John M. Flynn, Judge.

Action to enjoin the defendants from issuing, signing and delivering certain county bonds of Bonner county to pay and redeem certain outstanding warrant indebtedness. *Affirmed.*

William J. Costello, for Appellants, filed no brief.

H. H. Taylor, for Respondent.

With the exception of the case of *Bannock County v. C. Bunting & Co.*, 4 Ida. 156, 37 Pac. 277, the points here raised have not been directly passed upon by this court. There was no occasion for controversy until sec. 15, art. 7 of the constitution was made effective by the laws of 1913.

The enactment of the revenue law of 1913 calls for this construction, and it cannot be construed otherwise, for having been enacted subsequent to the enactment of sec. 1960, Rev. Codes, it plainly prohibits the issuance of bonds to take up outstanding warrants:

McCARTHY, District Judge.—The following are the material facts of this case as they appear from the allegations of the complaint: The plaintiff is a resident and taxpayer of Bonner county, Idaho, and the defendants, George McCombs, John C. Nagel and Don. C. McColl, are now and were at all

times concerned in this action the county commissioners of Bonner county, Idaho. The defendant Andrew Christensen is and was at all times concerned in the action the clerk of said board of county commissioners.

In April, 1912, the board of county commissioners of Bonner county, in accordance with the provisions of the revenue law in force at that time, appropriated by resolution for the current expenses of said county for the fiscal year beginning on the second Monday in April, 1912, the net sum of $76,967. To raise the money required by this appropriation the board levied a tax of three mills, which would produce only $30,913.38, or less than one-half of the amount required by the appropriation. As a consequence there were outstanding and unpaid in July, 1913, warrants drawn on the current expense fund for the fiscal year 1912–13 in the amount of $43,759.04. In addition to these warrants there were other warrants of the county outstanding and unpaid which brought the total amount of warrant indebtedness up to the amount of $100,000.

On July 18, 1913, at an adjourned regular session, the board of county commissioners resolved to issue negotiable coupon funding bonds of the county in an amount sufficient to redeem or pay the outstanding warrant indebtedness, and at a later session ordered the clerk of the board to cause to be published according to law a notice of their intention. The notice has been published and the bonds have been awarded and the defendants, unless restrained, will make, execute and deliver the negotiable coupon bonds of the county in an amount in excess of $100,000 for the purpose of redeeming or paying the warrant indebtedness.

The defendants demurred generally to the plaintiff's complaint upon the ground that the facts set forth in it and outlined above are not sufficient to constitute a cause of action. This demurrer was overruled by the trial court and the defendants elected to stand upon their demurrer. The trial court then rendered judgment in favor of the plaintiff and against the defendants, permanently enjoining and restraining the latter from proceeding further in the matter of the

execution of negotiable coupon funding bonds of Bonner county, for the purpose of redeeming or paying outstanding warrants of the county, or from signing, executing or delivering bonds of the county to pay or redeem outstanding warrants. From this judgment of the trial court the defendants appeal to this court.

An examination of this case involves the consideration and construction of certain provisions of the state constitution and of the statutes. Sec. 15 of art. 7 of the constitution of the state of Idaho reads as follows:

"The legislature shall provide by law, such a system of county finance, as shall cause the business of the several counties to be conducted on a cash basis. It shall also provide that whenever any county shall have any warrants outstanding and unpaid, for the payment of which there are no funds in the county treasury, the county commissioners, in addition to other taxes provided by law, shall levy a special tax, not to exceed ten (10) mills on the dollar, of taxable property, as shown by the last preceding assessment, for the creation of a special fund for the redemption of said warrants; and after the levy of such special tax, all warrants issued before such levy, shall be paid exclusively out of said fund. All moneys in the county treasury at the end of the fiscal year, not needed for current expenses, shall be transferred to said redemption fund."

Sec. 99 of chap. 58 of the Sess. Laws of 1913 provides that upon all taxable property of the county the board of county commissioners must each year levy a tax for the redemption of outstanding county warrants issued prior to the second Monday of April in said year, to be collected and paid into the county treasury and apportioned to the county redemption fund, which levy must be sufficient for the redemption of all such outstanding county warrants before the second Monday of April in the succeeding year, unless the amount of such outstanding warrants exceeds the amount that would be raised by a levy of one hundred cents on each one hundred dollars of such assessed valuation, in which case the board must annually levy a tax of one hundred cents on each one

hundred dollars of such assessed valuation for the redemption of such outstanding warrants.

Sec. 101 of said chap. 58 provides that the county auditor must furnish the board with a statement of the amount of outstanding county warrants for the current year and for the prior years.

Sec. 212 provides that "all acts and parts of acts in conflict with this act are hereby repealed."

Chap. 33, Sess. Laws 1913, provides as follows: "The board of county commissioners of any county in this state, may issue negotiable coupon bonds of their county for the purpose of paying, redeeming, funding or refunding the outstanding indebtedness of the county, as hereinafter provided, whether the indebtedness exists as warrant indebtedness, or bonded indebtedness. Said bonds shall be issued as near as practicable in denominations of one thousand dollars each, but bonds of the denominations of five hundred and one hundred dollars may be issued when necessary. Said bonds must bear interest at a rate of not to exceed six per cent per annum, the interest to be paid on the first day of January and the first day of July in each year, at the office of the county treasurer, or at such bank in the city of New York as may be designated by the board of county commissioners; such bonds to be redeemed by the county in the following manner: Ten per cent of the total amount issued to be paid in ten years from the date of issue; and ten per cent annually thereafter until all of said bonds are paid. But said bonds or any part thereof may, at the option of the county issuing the same, be redeemed at any time after five years from the date of their issue, provided such time and option be stated upon the face of each bond, and each bond must be redeemed in the order it is numbered."

In this opinion chapters 33 and 58 of Sess. Laws 1913 will be referred to simply as chapter 33 and chapter 58.

It is apparent that sec. 99 of chap. 58 was enacted and approved for the purpose of carrying out the provisions and directions of sec. 15, art. 7 of the constitution. Chap. 58 carries an emergency clause, and was approved March 13,

1913. Chap. 33 does not carry an emergency clause and was approved February 25, 1913. The twelfth session of the legislature, which enacted both these statutes, adjourned on March 8, 1913, and chap. 33 did not go into effect until sixty days from said date, since it did not carry an emergency clause.

Chap. 33 is amendatory of sec. 1960 of the Civil Code of Idaho and makes no change in that section except to provide that the bonds may be redeemed at any time after five years from the date of their issuance, whereas sec. 1960 provides that they may be redeemed after ten years from the date of their issuance. The provision empowering the board of county commissioners to issue negotiable coupon bonds for the purpose of paying outstanding warrant or bonded indebtedness was not amended or changed in the least, and in this respect chap. 33 reads just like the original section 1960 of the codes.

The precise question involved in this action is, whether or not, since the passage and approval of chap. 58, the board of county commissioners has the right to issue bonds of the county to pay or redeem outstanding warrants of the county issued prior to the time when said chap. 58 went into effect. It is a fact that the warrants, for the purpose of paying and redeeming which the county bonds in question were issued, were issued prior to such time.

The appellants concede that chap. 58 removes the power of the county commissioners to issue county bonds for the payment of warrant indebtedness which may be issued subsequent to the time when chap. 58 went into effect. They contend, however, that it was not the intention of the legislature to make sec. 99 of chap. 58 relate to warrants issued before the statute went into effect, and that the legislature intended when enacting chap. 33 to keep in effect the provisions of sec. 1960, Rev. .Codes, which permitted the county commissioners to issue bonds to pay warrant indebtedness, so far as warrants issued before chap. 58 went into effect are concerned.

Since it is necessary to construe several statutes passed at the same session of the legislature, certain fundamental rules

of statutory construction should be borne in mind.    Chap. 33 and chap. 58 relate to revenue and the power of the commissioners in relation to it.    The rule that statutes *in pari materia* should be construed together applies with peculiar force to statutes passed at the same session of the legislature; they are to be construed together, and should be so construed, if possible, as to harmonize and give force and effect to the provisions of each.    If, however, they are necessarily inconsistent, the statute which deals with the common subject matter in a more minute and particular way will prevail over a statute of a more general nature.    These rules are so well established as to neither require nor justify any citations of authorities in support of them.

Since chap. 58 contains an emergency clause, and chap. 33 does not, chap. 58 went into effect before chap. 33.

The general rule at common law seems to have been that of two inconsistent statutes enacted at the same session of the legislature, the one which went into effect at the later date would prevail.    (*Harrington v. Harrington,* 53 Vt. 649; *State v. Edwards,* 136 Mo. 360, 38 S. W. 73; Sutherland on Statutory Construction, 2d ed., p. 541, sec. 280, note 45.)

At common law this was a sensible rule, because the general rule was that a statute went into effect from the date of its passage, that is, from the date of the last act necessary to complete the process of legislation and give the bill the force of law.    (Sutherland on Statutory Construction, 2d ed., p. 308, sec. 172.)    Under our constitution no act takes effect until sixty days from the end of the session at which the same shall have been passed, except in case of emergency, which emergency shall be declared in the law.    (Const., art. 3, sec. 22.)    Thus, except in the case of emergency acts, all acts of the legislature go into effect at the same time.    Therefore, in the great majority of cases, the common-law rule would not be an effective guide.    While it is not necessary for the purposes of this case to lay down a general rule for all cases, we will say in passing that we are inclined to the opinion that, in case of an irreconcilable conflict between two acts passed at the same session of the legislature, the one should prevail

which was last approved by the governor, the approval of the governor being the last act in the process of legislation under our constitution and statutes.

It has been held that where two conflicting acts upon the same subject matter are passed at the same session of the legislature, and their conflict is such that they cannot be harmonized and stand together, where one of them contains an emergency clause and the other does not and the one containing the emergency clause was passed by both houses of the legislature after the other, under such circumstances the act containing the emergency clause should prevail over the other. (*Heilig v. City Council of Puyallup,* 7 Wash. 29, 34 Pac. 164.) The supreme court of Washington says in the last-mentioned case: "The simple fact of there being an emergency clause would tend to show that the subject matter of the act was more clearly and pointedly before the legislature than the subject matter of the other act." Another reason for the decision is that the act which is passed later is the later expression of the legislative will. To the same effect see *Belding Land etc. Co. v. City of Belding,* 128 Mich. 79, 87 N. W. 113; *Dewey v. City of Des Moines,* 101 Iowa, 416, 70 N. W. 605; *Board of Education v. Tafoya,* 6 N. M. 292, 27 Pac. 616.

This court takes judicial notice of the journals of the House of Representatives and Senate of this state in passing upon legislation. (Sec. 5950, subd. 3, Rev. Codes; *Burkhart v. Reed,* 2 Ida. 503, 22 Pac. 1.) Chap. 33 passed the House and was transmitted to the Senate on February 5, 1913, and passed the Senate and was returned to the House on February 20, 1913; it was presented to the governor on February 24th. (House Journal, pp. 183 and 360; Senate Journal, p. 212, printed copies.) It was approved by the governor on February 25th. Chap. 58 passed the House and was transmitted to the Senate on March 4th, was passed by the Senate and returned to the House on March 8th, and was presented to the governor on March 8th. (House Journal, pp. 503 and 615; Senate Journal, p. 393, printed copies.) It was approved by the governor on March 13, 1913.

It thus appears that chap. 58 passed both Houses and was approved by the governor later than chap. 33, and therefore was a later expression of the legislative will than chap. 33. The fact that chap. 58 carries an emergency clause signifies that it was considered more° urgent and more important by the legislature than chap. 33, which does not carry an emergency clause.

For these reasons we think that in case of an irreconcilable inconsistency it should be held that chap. 58 repeals chap. 33 to the extent of such inconsistency.

The defendants contend that to make chap. 58 apply to warrants issued before it went into effect would be to render it a retroactive or retrospective law. It is the rule that all statutes are to be considered as having only a prospective operation unless the purpose and intention of the legislature to give them a retrospective effect is clear. (36 Cyc. 1205, "c," and cases cited; *Katz* v. *Herrick*, 12 Ida. 1, 86 Pac. 873.) This rule is embodied in sec. 3, Rev. Codes, which provides that "No part of these Revised Codes is retroactive, unless expressly so declared." We do not think, however, that this section means that the statute must use the words "this statute is to be deemed retroactive." We think it is sufficient if the enacting words are such that the intention to make the law retroactive is clear. In other words, if the language clearly refers to the past as well as to the future, then the intent to make the law retroactive is expressly declared within the meaning of sec. 3, Rev. Codes.

Bearing in mind the rules of statutory construction which are outlined above, the question is, What was the intention of the legislature in enacting chap. 33 and chap. 58 so far as the precise point which we are considering is concerned? Sec. 15, art. 7 of the constitution made it the duty of the legislature to enact chap. 58, and it should have been enacted long before it was,—in fact, at the first session of the legislature. After directing that such a law should be passed, it says: "And after the levy of such special tax, all warrants issued before such levy, shall be paid exclusively out of such fund." Of course

the legislature had this language in mind when it passed and enacted chap. 58.

This court held, in *Bannock County v. C. Bunting & Co.,* 4 Ida. 156, 37 Pac. 277, that sec. 15, art. 7 of the constitution was not self-executing, for the reason that it did not provide necessary machinery for its execution. However, when such machinery was provided by chap. 58, sec. 99, we think that the language of said section just above quoted is self-executing, and that all warrants issued before the levy of the tax for the purpose of paying warrant indebtedness must be paid out of that fund to the exclusion of any other method.

Sec. 99 of chap. 58 says that the board must levy a tax for the redemption of outstanding county warrants issued prior to the second Monday of April in the year in which the tax is levied. Reading this language in the light of the constitutional provision, it seems to us that it clearly refers to all warrants issued before the levy of the tax. Sec. 15, art. 7 of the constitution makes it the duty of the legislature to pass such laws as shall place and maintain the counties of the state upon a cash basis. We do not think that a law passed in obedience to such a mandate should be given a construction which would defeat in part the mandate itself.

It should be borne in mind that chap. 58 is a remedial statute, or one relating to procedure. It does not impair any existing right or indebtedness, but simply relates to the method of procedure which shall be followed in paying an indebtedness. The provision of sec. 101 of chap. 58 that the county auditor shall furnish the board with a statement of the amount of outstanding warrants for the current year and for prior years also enforces the conclusion that the legislature did not mean to confine the operation of the law to warrants issued after the law went into effect. We conclude that the legislature, when enacting sec. 99 of chap. 58, intended to make it apply to all warrant indebtedness irrespective of whether the warrants were issued before or after that chapter went into effect, that there is no rule of law which prevents or inhibits such construction, and that such construction should be placed upon the statute. It follows, then, that

chap. 58 repeals the provision of chap. 33, which empowers the commissioners to issue funding bonds for the purpose of paying any warrant indebtedness. Chap. 33 is not, however, entirely repealed, but is still in effect so far as bonded indebtedness is concerned.

Counsel for both plaintiff and defendants have referred to the decision in the case of *Bannock County v. C. Bunting & Co.*, 4 Ida. 156, 37 Pac. 277. We cannot see that this decision is directly in point. It of course holds by implication that sec. 15 of art. 7 of the constitution is not self-operative. Sec. 99 of chap. 58 makes that provision of the constitution operative. In that case the court upholds the old law granting the commissioners power to bond not only for refunding bonded indebtedness but also for warrant indebtedness. The court, however, had no such provision before it as the provision of sec. 99 of chap. 58, which, as we hold in this opinion, abrogates such power.

The judgment of the lower court should be affirmed, and it is so ordered. Costs awarded to respondent.

Ailshie, C. J., and Sullivan, J., concur.