(February 26, 1921.)

## LACLEDE HIGHWAY DISTRICT, Appellant, v. BONNER COUNTY, IDAHO, Respondent.

[196 Pac. 196.]

HIGHWAY DISTRICTS — COUNTIES — CONSTITUTIONAL LAW — STATUTORY CONSTRUCTION—COUNTY FINANCES—APPORTIONMENT OF FUNDS.

1. Under the provisions of art. 7, sec. 15, of the constitution, and C. S., sec. 3219, moneys in the county treasury at the end of the county fiscal year are to be transferred to the warrant redemption fund by resolution of the board of county commissioners only when they are not needed in the payment of current expenses for the purposes or funds for which they were collected.

2.   The determination as to whether moneys remaining in the county treasury at the end of the fiscal year shall be deemed needed for current expenses, for the purposes or funds for which they were collected, or whether they shall be transferred to the warrant redemption fund, rests in the discretion of the board of county commissioners.

3.   The purpose of art. 7, sec. 15 of the constitution is to put county finances on a cash basis, and the legislature is without authority to direct the transfer of moneys to the warrant redemption fund out of any fund at the end of the fiscal year, so long as such moneys are needed in such fund to meet the expenses chargeable thereto, in order that the fund may be kept on a cash basis; and only the surplus above the amount needed for current expenses may properly be transferred to the warrant redemption fund to take up outstanding unpaid warrants drawn upon other funds.

4.   Under the provisions of C. S., secs. 1524 and 1529, a highway district is not entitled to have apportioned to it any part of such funds as are necessary to satisfy liabilities which the county has incurred prior to the organization of such highway district and which are properly chargeable to such funds.

5.   Under the provisions of C. S., sec. 1529, which provides for the apportionment of county road and bridge fund levies made after the organization of a highway district, the percentages specified are to be paid respectively to the county and district immediately upon collection by the proper officers, and the board of county commissioners is without lawful authority to apportion the same.

APPEAL from the District Court of the Eighth Judicial District, for Bonner County. Hon. John M. Flynn, Presiding Judge.

Appeal from an order of the board of county commissioners of Bonner county disallowing a claim of Laclede highway district for its proportionate share of the road and bridge fund. Judgment for defendant. *Reversed and remanded.*

3.   On right of state to authorize or direct diversion of county funds to purpose other than that for which they were collected, see note in L. R. A. 1915D, 274.

G. H. Martin, for Appellant.

Under the provisions of C. S., sec. 9444, the statutes of this state must be liberally construed, to effect their evident purpose and harmonize their various provisions. (*Lamkin v. Sterling,* 1 Ida. 92.)

And so as to give effect to each and every part thereof, if possible. (*People v. Hunt,* 1 Ida. 433.)

Statutes that pertain to the same subject matter should be construed together. (*Noble v. Bragaw,* 12 Ida. 265, 85 Pac. 903.)

The board had no right to deplete the funds, to a part of which the district was entitled, by the allowance and payment of claims which could not lawfully be payable out of the revenues derived from the 1917 levy. (*Smith v. Broderick,* 107 Cal. 644, 48 Am. St. 167, 40 Pac. 1033; *Arthur v. City of Petaluma,* 175 Cal. 216, 165 Pac. 698.)

Peter Johnson and Herman H. Taylor, for Respondent.

The taxes in controversy, collected on and after the second Monday of April, 1918, must be paid into the county treasury and apportioned to the county warrant redemption fund, and the district has no right to any share in that. (Const., secs. 15, 16, art. 7; C. S., secs. 3211, 3217, 3219; *Peavy v. McCombs,* 26 Ida. 143, 140 Pac. 965.)

These taxes would not thereafter come into such county road and bridge funds under C. S., sec. 1524.

BUDGE, J.—The appellant highway district was organized June 1, 1918. Thereafter the district sought to have the board of county commissioners of Bonner county, in which the district is situated, apportion to it moneys raised by the county road and bridge fund levies under the provisions of C. S., sec. 1524, and an apportionment was made. An appeal was taken from the order of the county commissioners making the apportionment to the district court. The entire matter was thereupon submitted *de novo* to the district court upon certain stipulated facts and other evidence ad-

duced bearing upon the respective rights of the district and the county in the road and bridge fund levies not only for 1917 but for 1918. Findings of fact and conclusions of law were filed and a judgment entered decreeing the rights of the county and the district in the moneys raised by the respective levies. This appeal is from the judgment.

There is no material dispute as to the facts, and the only serious questions presented for our consideration are questions of law involving the interpretation and construction to be placed upon C. S., secs. 1524 and 1529, the former section providing a rule of apportionment of levies made for road and bridge purposes by the county prior to the organization of a highway district, and the latter section providing a rule of apportionment as to levies made after the organization of a highway district.

In order to interpret the foregoing sections, it will be necessary to contrue and apply certain other sections not only of the compiled statutes, but of the constitution of this state, relating to revenue and taxation. It should be noted at the outset that while art. 7, sec. 1, of the constitution fixes the beginning of the fiscal year as the second Monday of January unless otherwise provided by law, the legislature has fixed the fiscal year for the conduct of county business to begin on the second Monday of April of each year. (C. S., secs. 3217, 3219; *Peavy v. McCombs,* 26 Ida. 143, 140 Pac. 965.)

The first error into which the trial court fell consisted in holding that all money in the county treasury at the end of the fiscal year and all moneys thereafter collected on the levy for the preceding year pass by operation of law into the warrant redemption fund. The constitutional provision, art. 7, sec. 15, is:

"  . . . . All moneys in the county treasury at the end of each fiscal year, not needed for current expenses, shall be transferred to such redemption fund."

Clearly, this provision implies that any moneys needed for current expenses do not necessarily, and by operation of law, have to be placed in the warrant redemption fund.

The sections of the Compiled Statutes which the legislature has enacted to carry into effect the foregoing provision of the constitution are as follows:

"3219. Warrant redemption fund: Apportionment from other funds. All taxes levied in any year for the county current expense fund, county road fund and county bridge fund and collected on or after the second Monday of April in the succeeding year and any tax levied for any purpose and which is no longer needed for such purpose when collected must be paid into the county treasury and apportioned to the county warrant redemption fund, except as otherwise provided by law. All money in the county treasury on the second Monday of April to the credit of the county current expense fund, county road fund, county bridge fund or any other fund which is no longer needed must be transferred to the county warrant redemption fund upon the books of the county auditor and county treasurer by resolution of the board of county commissioners entered upon the records of the proceedings."

"3220. Manner of transferring county funds. No transfer of money from one county fund to another county fund must be made upon the books of the county auditor and county treasurer unless the same is authorized and so ordered by resolution of the board of county commissioners entered upon the records of its proceedings and certified copies of such resolution filed in the office of the county auditor and county treasurer."

It will be observed that sec. 3219, *supra,* contemplates that the money which is not needed for the purposes for which it was collected is to be transferred to the warrant redemption fund by resolution of the board of county commissioners. Necessarily the duty of ascertaining what money in the treasury at the end of the fiscal year or thereafter collected out of the levy of the preceding year is needed must devolve upon someone, and by this section the legislature has committed that duty to the discretion of the board of county commissioners. If any doubt upon this point arises by reason of certain ambiguities in sec. 3219, it has

been eliminated by the provisions of sec. 3220 that no transfer of the moneys must be made unless authorized and ordered by resolution of the board.

The only levy in this case which the provisions we have been discussing could affect is the 1917 levy, and as to that the board of county commissioners passed no resolution transferring any of the moneys to the warrant redemption fund. Viewing this situation in the light of the rule that the presumption is that public officers have done their duty according to law, the legitimate inference is that the board of county commissioners · of Bonner county reached the conclusion that there was no money in the county treasury which was no longer needed, and therefore none which they were required to transfer to the warrant redemption fund.

Again, the sole purpose of art. 7, sec. 15, of the constitution is to put the business of the county on a cash basis. Keeping this dominant thought in mind, it is a reasonable interpretation to place upon that portion of the latter section above quoted that the legislature is without authority to authorize or direct the transfer of moneys out of any fund so long as needed in that fund to meet the expenses chargeable thereto, to the warrant redemption fund. The manifest purpose of the constitutional provision is to require moneys to be kept in the fund for which they were levied so long as needed for the current expenses chargeable to the fund, to the end that that fund should be kept on a cash basis and that the surplus, if any, over and above the amount needed for current expenses should be transferred to the warrant redemption fund to take up outstanding unpaid warrants drawn upon other funds in order that they should be pulled up onto a cash basis.

With these general principles in mind, a rational interpretation of C. S., secs. 1524 and 1529, is attended with little difficulty. Whether the provisions of sec. 1524 could have any application to any moneys actually transferred to the warrant redemption fund, we need not consider, for, as already noticed, no such transfer of any of the moneys arising from the 1917 levy was made. The statute directs

that within ten days after the organization of the highway board the board of county commissioners shall cause to be paid over to its treasurer the proper share of the district in the road and bridge funds. In order to ascertain such share the statute directs that from the total amount of the road and bridge funds consisting of the balance, if any, on hand at the beginning of the current calendar year, i. e., the year in which the district is organized, augmented by the amount of whatever taxes may have been thereafter collected, i. e., after the beginning of the current calendar year, and paid into such road and bridge funds, there shall be deducted the amount of any payments made from such funds since that date, and also any amount needed to make good any deficiency in such funds that may have existed at that date. The resulting amount is, for the purpose of computation only, designated the net road and bridge fund. The district's contribution thereto is an amount which bears thereto the same ratio that the amount of the road and bridge property taxes levied by the county within such district in the preceding year (less twenty-five per cent of the road fund levy within any included municipalities), bears to the total amount of road and bridge property taxes levied in the county in such preceding year. The proper share of the district is ninety-five per cent of such contribution to the net road and bridge fund. All moneys thereafter coming into such county road and bridge fund by reason of county levies made prior to the organization of the highway district but which may not at the time of such organization have been collected by the county, shall, as fast as collected, be accounted for and apportioned in the same manner. But the board of county commissioners is authorized by the section, pending final adjustment and payments of the amounts provided for, to retain such proportion of said funds as shall be required to meet outstanding warrants lawfully issued against the same prior to the organization of such highway district, and outstanding indebtedness of the county lawfully contracted prior to the organization of the district and lawfully chargeable and pay-

able out of such funds.  In other words, the district is not
to participate in any of so much of the funds as shall be
necessary to satisfy any liabilities which the county has
incurred prior to its organization, chargeable thereto.  By
so providing, the legislature has clearly sought to keep within
the constitutional inhibition requiring needed funds to be
kept in the county treasury in the fund for which levied.
No reason is apparent to our minds for holding that the
district was not entitled to participate in the balance of the
road and bridge funds accruing from the 1917 levy accord-
ing to the apportionment provided for in this section.

As to sec. 1529, which provides for the apportionment of
county road and bridge fund levies made after the organiza-
tion of the district, there is no occasion for any confusion
whatever, for as to those sums the percentages specified in
the section are paid respectively to the county and district
immediately upon collection by the proper officers, and with
this apportionment the county commissioners have nothing to
do.  Any attempted apportionment of the road and bridge
funds accruing from any levy made subsequent to the or-
ganization of the district by the board of county commis-
sioners is without lawful authority, and in so far as the
board of county commissioners of respondent county have
attempted to deal with the road and bridge fund levy of
1918, their acts were wholly void and inoperative.

As already observed, there is no material dispute between
the parties as to the facts.  The judgment is reversed and
the case is remanded, with instructions to file conclusions of
law and enter a judgment in conformity with the views
herein expressed.  Costs are awarded to appellant.

McCarthy, Dunn and Lee, JJ., concur.

RICE, C. J., Dissenting.—The accounting in this case is
governed by C. S., secs. 1524 and 1530.  C. S., sec. 1529,
is not involved.

Section 1524 provides for computation of the amount due
the district, if any, at the time of its organization, from

taxes collected prior thereto. This computation is based upon the balance of the road and bridge funds on hand, if any, at the beginning of the calendar year, augmented by the amount of whatever taxes may have been collected and paid into such funds after the beginning of the year and before the organization of the district, after deducting payments made therefrom. I am of the opinion that the district court committed no error in connection with this portion of the computation.

C. S., sec. 3219, quoted in the majority opinion, is material in this case only for the reason that certain sums of money were collected between the second Monday of April, and the first day of June, 1918, the date upon which the district was organized, on account of the 1917 levy for the road and bridge funds of the county. Under section 1524, only the money in the road and bridge funds of the district enters into the computation of the amount due the district at the time of its organization.

The question is whether taxes collected between the second Monday of April and the first of June were legally in the road and bridge funds, or should have been apportioned to the warrant redemption fund. The language of section 3219 is perfectly clear and explicit. It directs the county auditor to apportion to the warrant redemption fund all taxes levied in any year for the county current expense fund, county road fund and county bridge fund and collected on or after the second Monday of April of the succeeding year, and also any tax levied for any purpose and which is no longer needed for such purpose, except as otherwise provided by law. The exception is found in C. S., sec. 1340. This exception is not operative until after the organization of the highway district as a separate taxing district within the county. Therefore, under the law the taxes collected between the second Monday of April and the date of the organization of the district should have been apportioned into the warrant redemption fund and could not enter into the computation of the amount due the district at the date of its organization.

In view of the construction placed upon section 3219 by the majority opinion, it should be noted that an apportionment of taxes is an entirely different thing from a transfer from one fund to another. A statutory command to apportion is directed to the county auditor, while a statutory command to transfer is directed to the county commissioners. The legislature used the two words in the section correctly and advisedly. The direction with reference to the transfer of funds relates only to money in the county treasury on the second Monday of April to the credit of the county current expense fund, county road fund and county bridge fund, and to any other fund which is no longer needed. In order to be in the county treasury on that date, it must have been collected prior thereto. It can have no reference to taxes collected thereafter.

In the majority opinion it is stated that "It will be observed that section 3219, *supra*, contemplates that the money which is not needed for the purposes for which it was collected is to be transferred to the warrant redemption fund by resolution of the board of county commissioners." The language of the statute, however, is "and any tax levied for any purpose and which is no longer needed for such purpose"— the singular of the word "purpose" being used and not the plural "purposes." The other clause of the section to which reference is made in the above quotation from the majority opinion is as follows: "or any other fund which is no longer needed." It requires a strained construction of the language to cause the word "needed" in either place where used in section 3219 to refer to the current expense fund, the road fund or the bridge fund. It clearly refers only to any other fund which may have been provided for by a previous tax levy.

The construction placed on section 3219 results in its nullification. The record in this case discloses that after the second Monday of April, 1918, taxes were collected by Bonner county on account of the 1917 road and bridge levies in the sum of $22,726.78. According to the stipulated facts, as shown by the record, the entire indebtedness which

could by any possibility be chargeable against this fund amounted to $9,213.88, leaving a balance of $13,512.90, against which no possible claims were outstanding. Yet the majority opinion announces, ''Viewing this situation in the light of the rule that the presumption is that public officers have done their duty according to law, the legitimate inference is that the board of county commissioners of Bonner County reached the conclusion that there was no money in the county treasury which was no longer needed, and therefore none which they were required to transfer to the warrant redemption fund.'' Thus, the legislative command becomes a nullity in the presence of the board of county commissioners. If the sentence from art. 7, sec. 15, of the constitution, quoted in the principal opinion, is given any force, the constitution too must yield to the discretion of a county board.

It has been correctly held that art. 7, sec. 15, of the constitution is not self-executing. But even if the sentence quoted in the majority opinion to the effect that all moneys in the county treasury at the end of each fiscal year, not needed for current expenses, shall be transferred to said redemption fund, be held to be self-executing, it contains no limitation, direct or indirect, upon the power of the legislature to authorize or require the transfer of any other moneys to the warrant redemption fund. The constitution does not assume to place limitations upon the methods or means which shall be provided by the legislature for causing the business of the several counties to be conducted on a cash basis, and I do not think the court should do so. There can be no constitutional objection to a statute requiring transfer of any fund to the warrant redemption fund at any time, and providing that outstanding warrants shall be paid therefrom.

Neither can I concur in the statement contained in the majority opinion that the legislature has fixed the fiscal year for the conduct of county business to begin on the second Monday of April of each year. If the legislature intended to change the date of the fiscal year, it has refrained

from giving expression to such intention.   C. S., secs. 3217 and 3219, do not make any reference to or in any way involve the question of when the fiscal year begins, and I am unable to find any expression in the opinion in the case of *Peavy v. McCombs,* 26 Ida. 143, 140 Pac. 965, to the effect that the beginning of the fiscal year had been changed to the second Monday of April.   Neither does C. S., sec. 3628, indicate an intention to change the fiscal year.   On the contrary, this section conforms naturally to the fiscal year beginning with the second Monday of January.   I think the entire revenue law, when considered as a whole, shows that there has been no intention to change the date from that fixed by the constitution.   (See C. S., secs. 3097, 3098, 3134, 3147, 3266, 3268, 3270, 3277, 3278, 3279, and related sections.)   Chapter 8 of the Session Laws passed by the Extraordinary Session of the legislature in 1912 contained the only expression which has ever been given by the legislature indicating a change of the beginning of the fiscal year.   This law was repealed by the act of March 13, 1913, which contains the body of our present revenue law.

By stipulation of counsel, it is agreed that the court should extend the accounting so as to include all taxes collected prior to the thirty-first day of January, 1919.   The apportionment of taxes collected by the county upon a levy made after the organization of a district, and for the fiscal year in which it is organized, is governed by C. S., sec. 1530. It appears from the record that in December, 1918, the board of county commissioners of Bonner county allowed a claim in favor of Ames & Pickett in the sum of $3,193.33, in settlement for certain road construction performed in the years 1913 and 1914, and in the same month issued a warrant in the sum of $5,000, based upon a judgment in favor of the city of Sandpoint for its proportion of the road levies between the years 1907 and 1916.   The court found as a fact that the payment of these warrants was made from moneys which were received by the county from the 1917 levy, collected after the second Monday of April, 1918, and after the organization of the district.

By section 1530, it is provided that of the proceeds of the road and bridge taxes, respectively, the county may retain, before making any division of the district, an amount sufficient to meet outstanding valid warrants lawfully issued against the same prior to the organization of such highway district, and to meet indebtedness of the county lawfully contracted against the same prior to the organization of such district and lawfully chargeable and payable out of such funds, referring to funds collected for the fiscal year in which a highway district is organized under a levy for such year made after the district was organized. Section 1524 contains a similar provision with reference to taxes collected after the organization of a highway district under a levy made prior thereto. The warrants above referred to were not issued prior to the organization of the highway district, and I am of the opinion that they were not issued in payment of indebtedness contracted against or lawfully chargeable or payable out of the road or bridge funds provided either for the year 1917 or 1918. I think, therefore, that the amounts of these warrants cannot be deducted from the amount received from taxes levied for those purposes either for the year 1917 or 1918 in making a computation of the amount due the district from the county. I understand the majority opinion so to hold.

I agree with the majority in holding that after the organization of the highway district, its proportion of the road and bridge taxes collected upon property within its boundaries should be apportioned direct to it, under the provisions of both sections 1524 and 1530, after making the deductions, if any, provided for in those sections.