(No. 6052.   August 3, 1933.)

LLOYD CORPORATION, a Corporation, Appellant, v. BANNOCK COUNTY, IDAHO, and R. T. HALE, H. C. CHRISTENSEN and JAMES J. FACER, as the Board of County Commissioners of Bannock County, Idaho, and BOARD OF COUNTY COMMISSIONERS OF BANNOCK COUNTY, IDAHO, Composed of R. T. HALE, H. C. CHRISTENSEN and JAMES J. FACER, and GRACE L. HALL, as Clerk of Board of County Commissioners of Bannock County, Idaho, Respondents.

[25 Pac. (2d) 217.]

Black & Baum, for Appellant.

B. A. McDevitt, for Respondents.

MORGAN, J.—Appellant, a taxpayer of Bannock county, commenced this proceeding in the district court to procure a writ prohibiting said county, the board of county commissioners, the members thereof and the clerk of the board, respondents herein, from issuing bonds funding $347,548.06 warrant indebtedness of the county, existing as of the second Monday of January, 1933. An alternative writ of prohibition was issued and a trial of the case resulted in a judgment quashing it, and confirming the acts of respondents authorizing the issuance of the bonds. This appeal is from the judgment.

Respondents, in attempting to fund this warrant indebtedness, acted pursuant to Idaho Code Annotated, secs. 30–1401 and 30–1402, as amended by Idaho Session Laws, 1933, chapter 153, p. 231, as follows:

Sec. 30–1401. "The Board of County Commissioners of any county in this state may issue negotiable coupon bonds of their county for the purpose of paying, redeeming, funding or refunding the outstanding indebtedness of the county, whether the indebtedness exists as a warrant indebtedness or bonded indebtedness. All such bonds shall be in the form and shall be issued, sold or exchanged and redeemed in accordance with the provisions of Chapter 2 of Title 55 of the Idaho Code Annotated, known as the 'Municipal Bond Law' of the State of Idaho, except where different provision is made herein. Provided, that the authority to fund warrant indebtedness shall extend only to the funding of warrant indebtedness existing as of the second Monday in January, 1933, and providing further that all taxes and

other revenues which but for the funding of warrants would have been lawfully applicable to the redemption of the warrants so funded shall, as and when collected, be apportioned to and placed in the sinking fund for the payment of the interest and retirement of the principal of such bonds. Bonds issued for the purpose of funding warrants shall bear interest payable semi-annually as the Board of County Commissioners may determine, not exceeding 6% per annum."

Sec. 30–1402. "For the purpose of extending the time of payment of said outstanding indebtedness, or reducing the interest charged, or when the interests of the county require it, the board may issue said bonds in exchange for bonds, theretofore issued by the county or for valid and legal warrants of the county outstanding on the second Monday of January, 1933, and may do so by resolution of the board at a regular meeting thereof, and without a vote of the people. Before any bonds shall be issued or exchanged under this section, the Board of County Commissioners shall ascertain that the bonds or warrants the payment of which is to be extended, or which are to be taken in exchange for the new issue of bonds, are valid and legal obligations of the county, and their findings of fact shall be entered of record on the minutes of their proceedings at least ten days before any exchange is made, as herein provided. The said board shall also, before issuing any bonds under this section, deduct from the total outstanding legal indebtedness of the county at the time of the issue of said bonds, the cash on hand in the treasury of the county, that is available for the payment of said legal indebtedness, or any part thereof, and the issue of bonds as in this section provided for, shall in no case exceed the aggregate or total legal indebtedness of the county then outstanding, less the cash on hand to be applied in payment and discharge of said indebtedness."

Appellant insists the action of respondents looking to refunding this warrant indebtedness violates Idaho Con-

stitution, art. 7, sec. 15, made effective by Idaho Code Annotated, secs. 61-803 and 61-807. The constitutional provision is as follows:

"The legislature shall provide by law, such a system of county finance, as shall cause the business of the several counties to be conducted on a cash basis. It shall also provide that whenever any county shall have any warrants outstanding and unpaid, for the payment of which there are no funds in the county treasury, the county commissioners, in addition to other taxes provided by law, shall levy a special tax, not to exceed ten mills on the dollar, of taxable property, as shown by the last preceding assessment, for the creation of a special fund for the redemption of said warrants; and after the levy of such special tax, all warrants issued before such levy, shall be paid exclusively out of said fund. All moneys in the county treasury at the end of each fiscal year, not needed for current expenses, shall be transferred to said redemption fund."

I. C. A., sec. 61-803, requires the board of county commissioners of each county to levy annually upon all taxable property of the county a tax for general county purposes, and sec. 61-807 provides:

"Upon the same property and for the same year the said board must levy a tax for the redemption of outstanding county warrants issued prior to the second Monday of April in said year, to be collected and paid into the county treasury and apportioned to the county warrant redemption fund, which levy must be sufficient for the redemption of all such outstanding county warrants before the second Monday of April in the succeeding year, unless the amount of such outstanding warrants exceeds the amount that would be raised by a levy of 100 cents on each $100.00 of such assessed valuation, in which case the board must annually levy a tax of 100 cents on each $100.00 of such assessed valuation for the redemption of such outstanding warrants."

In *Peavy v. McCombs*, 26 Ida. 143, 140 Pac. 965, this court had under consideration chapters 33 and 58 of 1913 Sess. Laws. Chapter 33 provided:

"The board of county commissioners of any county in this state, may issue negotiable coupon bonds of their county for the purpose of paying, redeeming, funding or refunding the outstanding indebtedness of the county, as hereinafter provided, whether the indebtedness exists as warrant indebtedness, or bonded indebtedness. . . . . "

Chapter 58 contained the above-quoted provisions from I. C. A., secs. 61–803 and 61–807. The court held, in *Peavy v. McCombs*, that the part of chap. 58 providing for the levy of a tax to be apportioned to the warrant redemption fund, for the redemption of outstanding county warrants issued prior to the second Monday of April of the year in which the levy was made, rendered art. 7, sec. 15, of the Constitution operative and repealed the portion of chap. 33, Sess. Laws, 1913, which provided for funding warrant indebtedness by bond issue. The language of the court is as follows:

"Counsel for both plaintiff and defendants have referred to the decision in the case of *Bannock County v. C. Bunting & Co.*, 4 Ida. 156, 37 Pac. 277. We cannot see that this decision is directly in point. It of course holds by implication that sec. 15 of art. 7 of the constitution is not self-operative. Sec. 99 of chap. 58 makes that provision of the constitution operative. In that case the court upholds the old law granting the commissioners power to bond not only for refunding bonded indebtedness but also for warrant indebtedness. The court, however, had no such provision before it as the provision of sec. 99 of chap. 58 (I. C. A., secs. 61–803 and 61–807) which, as we hold in this opinion, abrogates such power."

■ Bearing in mind that our Constitution is not a grant of, but is a limitation on the powers of the state, and that our legislature may provide for that which is not prohibited, a re-examination of art. 7, sec. 15, has been made for the purpose of ascertaining exactly what is thereby prohibited. That section requires the legislature to provide such a system of county finance as shall cause the

business of the counties to be conducted on a cash basis; also to provide that when a county shall have warrants outstanding and unpaid, for the payment of which there are no funds in the treasury, the county commissioners shall levy a special tax to create a fund for the redemption of such warrants and the levy, for that purpose, of more than ten mills on the dollar of taxable property in the county is prohibited. Then follows another prohibitive provision which is: "and after the levy of such special tax, all warrants issued before such levy, shall be paid *exclusively* out of said fund."

■ If it were not for this provision county warrants would be payable out of the funds upon which they were drawn in the order of their issuance; it would be impossible, so long as old warrants were outstanding, for the county to be on a cash basis, and the purpose of art. 7, sec. 15, of the Constitution, expressed in the first sentence thereof, would be defeated. This constitutional provision, while fixing a maximum and no minimum rate of levy to raise money to create and replenish the warrant redemption fund, forbids the payment of warrants, issued before the levy, out of any other fund than that. There is nothing in the Constitution which prohibits funding warrant indebtedness, by exchange of bonds for warrants, or by issuing and selling bonds, placing the proceeds thereof in the warrant redemption fund and using the same for the payment of outstanding warrants. Anything in *Peavy v. McCombs* in conflict with this view of art. 7, sec. 15, is overruled.

Some of the warrants sought to be refunded are emergency warrants issued in conformity to the provisions of I. C. A., sec. 30–1208, which provides for the expenditure of moneys in excess of the budget, prepared pursuant to the county budget law, of which that section is a part. Appellant insists the statute authorizing the issuance of emergency warrants violates Idaho Constitution, art. 8, sec. 3, which places limitations on county expenditures.

The statute states the circumstances which will justify emergency expenditures in excess of amounts stated in the budget, and provides: "the board of county commissioners may, upon the adoption, by the unanimous vote of the commissioners, of a resolution stating the facts constituting the emergency and entering the same upon their minutes, make the expenditures necessary to investigate, provide for and meet such an emergency."

The trial court found:

"That included among the total amount of warrants that are to be funded are certain warrants commonly known as emergency warrants, the total face value of such warrants being the sum of $87,873.21, and that each and all of such warrants were authorized to be issued by unanimous vote of the Board of County Commissioners of Bannock County, Idaho, and that the provisions of Section 30–1208 of the Idaho Code Annotated were in all respects complied with, and that such warrants, and each and all of them, were issued in payment of expenditures made to meet emergencies; that prior to authorizing the issuance of such warrants and in the manner as provided by law, the said defendant, Board of County Commissioners of Bannock County, Idaho, entered an order declaring that an emergency existed; that the proceedings in reciting the fact that an emergency, or emergencies, did exist are valid, and the Board of County Commissioners of Bannock County, Idaho, did not exceed their statutory or constitutional authority so vested in them."

The evidence produced at the trial fully establishes the facts so found, and it further appears that these emergency warrants were issued in payment of ordinary and necessary county expenses authorized by the general laws of the state.

Article 8, sec. 3, of the Constitution provides:

"No county .... shall incur any indebtedness, or liability, in any manner, or for any purpose, exceeding in that year, the income and revenue provided for it for such year, without the assent of two-thirds of the qualified electors thereof

voting at an election to be held for that purpose, not unless, before or at the time of incurring such indebtedness, provision shall be made for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof, within twenty years from the time of contracting the same. Any indebtedness or liability incurred contrary to this provision shall be void: provided, that this section shall not be construed to apply to the ordinary and necessary expenses authorized by the general laws of the state.''

To interpret section 30–1208 of the code to be a legislative effort to authorize the board of county commissioners to incur indebtedness, evidenced by emergency warrants, in excess of the income and revenue provided for it for the year, without procuring the assent of two-thirds of the qualified electors of the county, and without making provision for the collection of moneys with which to pay the principal and interest of such indebtedness as it falls due, as in art. 8, sec. 3, of the Constitution provided, unless such indebtedness or liability shall be for ordinary and necessary expenses authorized by the general laws of the state, would make it unconstitutional. However, such an interpretation is unnecessary and does not appear to have been intended by the legislature.

The record in this case shows that, after the budget was adopted, unforeseen circumstances arose which made necessary the expenditure of more money to meet certain ordinary and necessary expenses, authorized by the general laws of the state, than had been anticipated and included in the budget. These circumstances made necessary the issuance of the emergency warrants. They are justified by sec. 30–1208 of the code, and not violative of art. 8, sec. 3, of the Constitution, for it does not prohibit incurring indebtedness and liability for such expenses. (*Thomas v. Glindeman*, 33 Ida. 394, 195 Pac. 92.)

The issuance of refunding bonds for the purpose of retiring warrant indebtedness does not create an indebted-

ness or liability prohibited by Idaho Constitution, art. 8, sec. 3. It merely changes the form of evidence of an existing indebtedness. (*Butler v. City of Lewiston*, 11 Ida. 393, 83 Pac. 234; *Veatch v. City of Moscow*, 18 Ida. 313, 109 Pac. 722, 21 Ann. Cas. 1332; *Sebern v. Cobb*, 41 Ida. 386, 238 Pac. 1023.)

The board of county commissioners, by resolution, authorized the issuance of negotiable coupon bonds and directed that, in the event an exchange thereof could not be made for outstanding warrants, the bonds would be sold and the proceeds thereof used to pay the warrants. Appellant argues that to sell these bonds for the purpose of raising money to pay the warrants will violate chap. 153, Idaho Sess. Laws, 1933, which amends I. C. A., secs. 30–1401 and 30–1402, heretofore quoted, and points out that sec. 30–1402 provides ''that the board may issue said bonds in exchange . . . . for valid and legal warrants of the county.''

These two sections of the code relate to the same subject and must be read and construed together. Section 30–1401 provides:

''All such bonds shall be in the form and shall be issued, sold or exchanged and redeemed in accordance with the provisions of Chapter 2 of Title 55 of the Idaho Code Annotated, known as the 'Municipal Bond Law' of the State of Idaho, except where different provision is made herein.''

The Municipal Bond Law consists of secs. 55–201 to 55–226, inclusive. Section 55–202 provides:

''All bonds, including funding and refunding bonds, hereafter issued, under lawful authority, by any county . . . . shall be issued in the form and manner, and be registered, disposed of and redeemed, in accordance with the provisions of this act.''

Section 55–214 contains the following:

''Funding and refunding bonds shall be sold as provided in sections 55–214 to 55–218, inclusive, or they may be issued by way of exchange for unpaid indebtedness or outstanding bonds to be funded or refunded thereby, as may be determined by any such governing body.''

The law authorizes the sale of these bonds or the exchange thereof for outstanding warrants.

The resolution of the board of county commissioners, providing for the issuance of funding bonds, contains a provision that there shall be levied on all taxable property in the county, in addition to all other taxes, a direct annual tax sufficient to retire the interest on said bonds and to create a sinking fund to retire the principal thereof as they mature.

Appellant contends this provision violates art. 7, sec. 15, of the Constitution, and sec. 61–807 of the code wherein the annual levy to pay outstanding warrant indebtedness is limited to ten mills on the dollar of taxable property in the county.

The change in form of evidence of the indebtedness from warrants to bonds does not remove the restriction of the amount which may be levied annually to pay it; that restriction is read into the resolution and the obligation is, and the bonds will be, limited thereby.

That resolution contains the following recitals:

"That the Board of County Commissioners has ascertained and hereby certifies that each and all of said warrants, as above described, are valid and legal obligations of Bannock County, Idaho, for the payment of which the full faith and credit of said Bannock County are pledged, and that all of said warrants were issued for the necessary expenses of said County. . . . . "

Appellant contends these recitals are insufficient to establish that the requirement of I. C. A., sec. 30–1402, amended by chap. 153, Sess. Laws, 1933, had been complied with, as follows:

"The Board of County Commissioners shall ascertain that the bonds or warrants the payment of which is to be extended, or which are to be taken in exchange for the new issue of bonds, are valid and legal obligations of the county, . . . . "

No appeal was taken from the action of the board providing for this bond issue and certifying that the warrants,

for the retirement of which bonds are to be issued, are valid and legal obligations of the county, for the payment of which the full faith and credit of the county are pledged, and that said warrants were issued for the necessary expenses of the county, and no evidence was offered tending to show the recitals in the resolution are not true.

It will be presumed, in the absence of proof to the contrary, that the board of county commissioners did its duty and informed itself of the facts, and that the statements contained in its resolution, with respect to the warrant indebtedness to be funded, are true.

In *Dexter Horton T. & Sav. Bank v. Clearwater County,* 235 Fed. 743, the second section of the syllabus is as follows:

"Where county commissioners have in good faith acted on a matter within their jurisdiction, and no appeal is taken as provided for by statute, their order becomes final, and is not subject to collateral attack."

See, also, 22 R. C. L. 472; *Thomas v. Glindeman,* 33 Ida. 394, 195 Pac. 92; *American Fruit Growers, Inc., v. Walmstad,* 44 Ida. 786, 260 Pac. 168.

The judgment appealed from is affirmed, with costs to respondents.

Budge, C. J., and Givens, Holden and Wernette, JJ., concur.

### ON REHEARING.

#### (September 26, 1933.)

HOLDEN, J.—On the rehearing of this cause, upon the petition of the respondents, the respondents earnestly and forcefully contended that Bannock county's issue of funding bonds is not a limited obligation, but a general obligation of that county.

The members of this court are all agreed that section 15, of article 7, of the state Constitution does not prohibit counties from funding their warrants, and that our Con-

stitution is not a grant of, but a limitation on the powers of the state, and that our legislature may provide for that which is not prohibited, from which it follows that a county, for the purpose of placing itself on a cash basis, is given two methods: 1. It may fund its warrants, or: 2. Levy a special tax of not to exceed ten mills on the dollar. And that view of section 15 was taken by this court in the early case of *Bannock County v. Bunting,* 4 Ida. 156, 37 Pac. 277.

The majority of the court concludes that we must give practical effect to the language of section 15, of article 7, of the Constitution: *Bannock County et al. v. Citizens Bank & Trust Co. et al., ante,* p. 159, 22 Pac. (2d) 674; *Reed v. Gallet,* 50 Ida. 638, 299 Pac. 337. Taxes have been used more than any other instrument of government, as an engine of oppression. Constitutions are made for the use and protection, and not for the oppression, of the people.

Counties have been called upon to make extraordinary expenditures for the relief of unemployed and for charitable purposes, and at the same time have suffered a marked falling off in revenues because many property owners were unable to pay their taxes. In the instant case, the inability of many property owners to pay their taxes caused a carry over of outstanding warrants mounting into more than $347,000. In these circumstances, the board of county commissioners was compelled to adopt one of the two methods provided by section 15, article 7. If it had adopted the method of levying a special tax not exceeding ten mills on the dollar, it would have placed another heavy load upon property owners, which, added to the general tax load, must necessarily have been extremely oppressive, if not confiscatory. That result was avoided by adopting the method of funding the warrants and spreading payment of the bonds over a number of years.

Appellant argues that sections 61–803 and 61–807, I. C. A., are exclusive as to the manner and method of retiring outstanding indebtedness, and cites *Peavy v. McCombs,* 26 Ida. 143, 140 Pac. 965, in support of that contention. In

492

that case, this court had under consideration chapters 33 and 58 of 1913 Sess. Laws. Chapter 33 provided:

"The board of county commissioners of any county in this state, may issue negotiable coupon bonds of their county for the purpose of paying, redeeming, funding or refunding the outstanding indebtedness of the county, as hereinafter provided, whether the indebtedness exists as warrant indebtedness, or bonded indebtedness. . . . . "

Chapter 58 contained the above-quoted provisions from I. C. A., secs. 61–803 and 61–807.

In *Peavy v. McCombs, supra,* the court says:

"This court takes judicial notice of the journals of the House of Representatives and Senate of this state in passing upon legislation. (Sec. 5950, subd. 3, Rev. Codes; *Burkhart v. Reed,* 2 Ida. 503, 22 Pac. 1.) Chap. 33 passed the House and was transmitted to the Senate on February 5, 1913, and passed the Senate and was returned to the House on February 20, 1913; it was presented to the governor on February 24th. (House Journal, pp. 183 and 360; Senate Journal, p. 212, printed copies.) It was approved by the governor on February 25th. Chap. 58 passed the House and was transmitted to the Senate on March 4th, was passed by the Senate and returned to the House on March 8th, and was presented to the governor on March 8th. (House Journal, pp. 503 and 615; Senate Journal, p. 393, printed copies.) It was approved by the governor on March 13, 1913."

"It thus appears that chap. 58 passed both Houses and was approved by the governor later than chap. 33, and therefore was a later expression of the legislative will than chap. 33. The fact that chap. 58 carries an emergency clause signifies that it was considered more urgent and more important by the legislature than chap. 33, which does not carry an emergency clause."

"For these reasons we think that in case of an irreconcilable inconsistency it should be held that chap. 58 repeals chap. 33 to the extent of such inconsistency."

Sections 61–803 and 61–807, I. C. A., and secs. 30–1401 and 30–1402, I. C. A., as amended 1933 Sess. Laws,

p. 231, being *in pari materia,* and the two last-mentioned sections being a later expression of the legislative will than the first two, applying to the case at bar the rule that statutes *in pari materia* should be construed together, and also applying the rule announced by this court in *Peavy v. McCombs, supra,* that in case of an irreconcilable inconsistency between statutes *in pari materia,* the latest expression of the legislative will should control, then the last expression of the legislative will in 1933 would control in the instant case, even though an irreconcilable inconsistency existed, which we do not concede.

After exhaustive investigation, and much reflection, we finally conclude that under section 15, article 7, of the state Constitution, a county having outstanding and unpaid warrants, being desirous of paying the warrants and placing itself on a cash basis, may, under said section and existing legislation, either levy a special tax, not to exceed ten mills on the dollar, of taxable property, as shown by the last preceding assessment, for the creation of a special fund for the redemption of the warrants, or that a county may fund its outstanding and unpaid warrants, as in the instant case, and that if the warrants are funded, the bonds are general obligations of the county, payable as other general obligations of the county, and that the ten mill levy clause of section 15 has no application to such an issue of funding bonds.

The judgment is affirmed, with costs to respondents.

Budge, C. J., and Givens and Wernette, JJ., concur.

MORGAN, J., Dissenting.—The following provision of art. 7, sec. 15 of the Constitution is controlling: "the county commissioners, in addition to other taxes provided by law, shall levy a special tax, not to exceed ten mills on the dollar, of taxable property, as shown by the last preceding assessment, for the creation of a special fund for the redemption of said warrants; and after the levy of such special tax, all warrants issued before such levy, shall be paid exclusively

out of said fund." Believing, as stated in the original opinion, the change in the form of evidence of the indebtedness from warrants to bonds does not remove the restriction of the amount which may be levied annually to pay it, I cannot look upon a bond issue for the payment of which an unlimited tax levy may be made, otherwise than as violative of the Constitution.

To agree with the conclusion reached in the opinion on rehearing is to decide that a board of county commissioners may, by resolution, deprive the taxpayers of the protection which it was intended to afford them by the above-quoted language of the Constitution. I cannot do that.

I dissent from that part of the foregoing opinion on rehearing wherein it is held that the bonds under consideration are general obligations of the county.