(No. 5728.   May 14, 1931.)

WILLIAM T. REED, Suing on Behalf of Himself and of Other Persons Similarly Situated and Interested in the Subject of This Suit, Plaintiff, v. E. G. GALLET, as State Auditor of the State of Idaho, Defendant.

[299 Pac. 337.]

Sidman I. Barber, for Plaintiff.

Fred J. Babcock, Attorney General, and Z. Reed Millar, Assistant Attorney General, for Defendant.

BUDGE, J.—Plaintiff, a member of the current, twenty-first legislature of this state, from Kootenai county, was granted an alternative writ of mandate against the state auditor requiring the latter to draw, or show cause why he should not, a warrant for the payment to plaintiff of a sum equivalent to the number of miles from plaintiff's home to the capital and return at the rate of ten cents per mile, for attendance at the extraordinary session of the legislature convened at Boise, March 6–13, 1931.

As chapters 1 and 4 of the laws passed at the extraordinary session, an appropriation was made for the payment of the mileage of the officers and members for the extraordinary session, the state auditor being authorized and directed to draw his warrants on the general fund in payment

thereof upon the certificate of the presiding officer of the House or Senate, as the case might be. The Speaker of the House duly executed and delivered to the state auditor his certificate certifying that plaintiff was entitled to a sum equivalent to the number of miles from his home in Kootenai county to the capital and return, multiplied by the regular mileage rate, for his attendance at the special session of the legislature. The defendant state auditor refused to draw and deliver to plaintiff such warrant.

The regular session of the legislature adjourned at 9 o'clock P. M., March 5, 1931. By proclamation of the Governor, read to the members of the legislature immediately prior to adjournment of the regular session, the legislature was called into special session at 12 o'clock noon the following day, March 6, 1931, and, pursuant to call, both branches of the legislature convened at said time and date.

Plaintiff received mileage for attendance at the regular session, and it is admitted that he did not return to his home upon the adjournment of the regular session but remained at the capital during the interim between the two sessions. That is, plaintiff did not actually travel the distance from his home to the capital and return pending the calling of the special session, but remained in Boise after the adjournment of the regular session and through the special session. It is apparent therefore that plaintiff did not incur any expense for travel to the special session of the legislature.

Article III, section 23, of the Constitution of this state reads as follows:

"Each member of the legislature shall receive for his services a sum not exceeding $5 per day from the commencement of the session, but such pay shall not exceed for each member, except the presiding officers, in the aggregate, $300 for per diem allowances for any one session; and shall receive each the sum of 10 cents per mile each way by the usual traveled route.

"When convened in extra session by the governor, they shall each receive $5 per day; but no extra session shall

continue for a longer period than 20 days, except in case of the first session of the legislature. They shall receive such mileage as is allowed for regular sessions. The presiding officers of the legislature shall each in virtue of his office receive an additional compensation equal to one-half his per diem allowance as a member: Provided, That whenever any member of the legislature shall travel on a free pass in coming to or returning from a session of the legislature, the number of miles actually traveled on such pass shall be deducted from the mileage of such member.''

Is the allowance for mileage, set forth in the above constitutional provision, intended solely as reimbursement for expense incurred in travel, or is a member of the legislature entitled to a sum equivalent to mileage for attendance at a special session of the legislature regardless of whether he actually travels the distance from his residence to the capital and return?

Webster's New International Dictionary defines mileage as an allowance for traveling expenses at a certain rate per mile. Certainly this well-understood meaning of the term imputes the necessity of travel in order for one, claiming a sum as due under a constitutional or statutory provision authorizing payment of mileage, to be entitled to such payment. (46 C. J., p. 1018; *State v. Clausen,* 142 Wash. 450, 253 Pac. 805; *United States v. Smith,* 158 U. S. 346, 15 Sup. Ct. 846, 39 L. ed. 1011; 2 Bouvier's Law Dictionary, p. 2209.)

In a limited sense, mileage may become a part of the compensation, as said by the supreme court of Utah in *Marioneaux v. Cutler,* 32 Utah, 475, 91 Pac. 355, 359, the court adding:

''If the mileage allowance is limited to the amount actually expended in traveling, then it cannot, of course, add anything to the income of the recipient of the salary. But if the mileage is not so limited, as where a certain amount is allowed for each mile *traveled* and this amount exceeds the actual mileage charged, then the balance above such charge becomes a part of the official income or compensation . . . . ''

Compensation in this sense, however, is limited to whatever amount might be saved out of the mileage allowance after the actual travel is undertaken. For example, a member of the legislature might not require or actually expend the full mileage allowance in getting to and returning from a session of the legislature, and whatever might be saved out of the arbitrary sum provided for payment of traveling expenses would be to that extent compensation, but it would remain none the less a mileage allowance, with the right to collect therefor contingent upon the actual travel having been undertaken. Looking to the intent of the framers of our Constitution, as appropriately said in this regard in *State v. Clausen, supra,* they "must have had in mind the conditions which then existed. This was then a territory about to be admitted into the sisterhood of the states. . . . . Many of the legislators then coming from" distant "portions of the new state might and would have to travel many miles by stage or private conveyance before they could reach a line of railway, and then perhaps . . . . more miles of railway travel to reach the seat of government. Days would be consumed in the journey. Not only were railway fares then high, but stage fares were perhaps higher per mile traveled, meals and lodgings must necessarily be procured along the way, and it seems reasonable to suppose that, with their knowledge of the then conditions, the framers of the Constitution honestly believed that, in many cases at least, the legislators would be put to an actual expense equal to 10 cents for every mile traveled both coming and going; and it is not to be presumed that they saw in that allowance any overage which could be retained by the individual legislator, except perhaps some few who came from the most favored localities."

In order to uphold plaintiff's contention that he is entitled to the sum here claimed it would have to be regarded as within the intent of the framers of the Constitution that members of the legislature who resided a considerable distance from the seat of government were entitled to a greater amount for their services than those who lived in close proximity to the capital. This would not be uniform com-

pensation, and would be grossly unfair to members of the legislature who reside nearby. Justification for such position nowhere appears in the proceedings and debates of the constitutional convention. To entitle any member to collection of this greater amount as compensation for services would depend upon the fortuitous circumstance of a special session of the legislature immediately after adjournment of the regular session, an unusual occurrence.

Clearly, the provision of article III, section 23, of the Constitution: ''and shall receive each the sum of 10 cents per mile each way by the usual traveled route,'' imports actual and necessary travel, setting out what amounts to a definition of mileage and applying to reimbursement to members of the legislature in this behalf for attendance at a regular session. Since, for extra sessions the members of the legislature are authorized to receive ''such *mileage* as is allowed for regular sessions'' (referring back to the clause authorizing payment of mileage for attendance at regular sessions), we have both the well-understood meaning of the italicized term as an allowance for traveling expenses, and the clear implication in the first provision quoted that such allowance accrues only when expense has been incurred in actual travel.

It appears to us undisputably, giving practical effect to the language of the Constitution, as a court is adjured to do, that legislators were intended to be paid for their services at the rate of $5 per day, and reimbursed for their expenses in traveling to the capital from and thence to their homes at the rate of ten cents per mile; the mileage allowance accruing only when it is shown that the members actually traversed the distance from their respective homes to the capital to attend a session of the legislature and incurred expense in connection with such travel. (See vol. 2, Idaho Constitutional Convention Journal, p. 1259, remarks of Hon. Wm. H. Clagett, President of the Constitutional Convention.)

The plaintiff here having once been paid for his expenses in getting to and returning from the regular session of the twenty-first legislature and not having incurred

any travel expense in attending the extraordinary session, convening the day after adjournment of the regular session, it follows that the legislative enactments designated as chapters 1 and 4 of the extraordinary session of the legislature of 1931 are in contravention of Article III, section 23, of the state Constitution, and therefore void, so far as applying to members of the legislature who, like plaintiff, remained at the capital after adjournment of the regular session of the legislature pending the convening of the special session.

While it may be recognized that the compensation allowed to state legislators, and other public servants, for their services, is inadequate, any increase in the legislators' pay must come through submission and adoption of a constitutional amendment, and cannot be accomplished by the means herein attempted.

The alternative writ of mandate is quashed and the proceeding dismissed.

Givens, Varian and McNaughton, JJ., concur.