(No. 6818. January 21, 1941.)

FRED M. TAYLOR, Plaintiff, v. STATE OF IDAHO, Defendant.

[109 Pac. (2d) 879.]

Fred M. Taylor, Maurice H. Greene and E. H. Anderson, for Plaintiff.

Vestal P. Coffin, *Amicus Curiae.*

J. W. Taylor, Attorney General, and Lawrence B. Quinn, E. G. Elliott, R. W. Beckwith and D. W. Thomas, Assistant Attorneys General, for Defendant.

BUDGE, C. J.—This action was filed in the Supreme Court on June 8, 1940, under and by virtue of section 10, article 5 of the Constitution of the State of Idaho, invoking the original jurisdiction of this court to hear claims against the State of Idaho and for a recommendatory judgment after action of the State Board of Examiners disallowing the claim of plaintiff.

The issues involved and the facts established by the amended complaint and amended answer are in effect as follows:

The plaintiff Fred M. Taylor, on May 15, 1939, was appointed as attorney to the Idaho State Liquor Board and Dispensary by said board under and by virtue of section 308 of chapter 222 of the 1939 Session Laws with the rate of pay of $83.33 a month and received on November 1, 1939, a new certificate of appointment by the State Liquor Dispensary increasing his salary to $100 a month. As such attorney his salary was allowed by the State Board of Examiners in full up to and including April 17, 1940, at about which time J. W. Taylor, Attorney General for the State of Idaho, informed the plaintiff by letter that his services as

attorney for the State were no longer required. Subsequent to such notification, on April 26, 1940, plaintiff presented a claim to the State Liquor Dispensary for his salary for the month of April, 1940. This claim was approved by the State Liquor Dispensary and its manager and was presented to the State Board of Examiners for approval and allowance by said board. Upon advice of the Attorney General the Board of Examiners allowed said claim in part, that is for the sum of $56.67, covering the period from April 1, 1940, to April 17, 1940, and disapproved the balance. The State of Idaho, being represented by the Attorney General, has admitted the factual statements contained in the amended complaint but denies the legal authority of the Idaho Liquor Board to employ legal counsel, asserting that this right rests solely with the Attorney General of the State of Idaho, and that said Attorney General had not appointed said plaintiff, and that that portion of the law under which his appointment was made is unconstitutional and void and the State is not legally chargeable with his salary.

With the consent of plaintiff Vestal P. Coffin petitioned the court and was granted permission to appear herein as *amicus curiae* and permitted to sign in such capacity the brief to be filed by plaintiff.

Paragraph VI of defendant's amended answer alleges in part as follows:

"That the State Board of Examiners of the State of Idaho did not err in law in disapproving the said claim of Plaintiff; that Sec. 308, ch. 222 of the 1939 Session Laws of the State of Idaho, insofar as it purports to create the position of legal counsel or attorney of and for said State Liquor Board and said Dispensary and to empower said Board to select or appoint such legal counsel or attorney, to prescribe the qualifications of any person so selected or appointed, to fix compensation, assign the duties, and to discharge such or any such person so selected or appointed, is in violation of and contrary to the provisions of the Constitution of the State of Idaho; that the exercise by said Board of any or all of the purported powers attempted by said statute to be created and vested in said Board was and is an infringement on and an invasion of the duties, rights and powers imposed

upon and vested in the Attorney General of the State of Idaho by the provisions of said Constitution, their intendment and effect, particularly Sec. 1, Art. 4; Sec. 3, Art. 4; and Sec. 1, Art. 2 of the Constitution of Idaho. . . . . ''

Section 308, chapter 222, Laws of 1939, page 465, provides:

''Without attempting or intending to limit the general powers of the board contained in section 307 hereof, such powers shall extend to and include the following: . . . .

'' (b) To prescribe the qualifications of and to select clerks, accountants, agents, vendors, inspectors, servants, legal counsel, and other personnel to conduct its business and perform its functions; to require from those holding positions of trust, bonds with approved sureties; to fix the compensation of all appointees and employees, assign their duties, and to discharge them.''

The only issue in the case is whether that portion of chapter 222, 1939 Session Laws, empowering the State Liquor Board to employ legal counsel to conduct its business and perform its functions, fix his compensation, assign his duties and to discharge him violates the Constitution in that it deprives the Attorney General of such powers.

It may be said that the statute referred to and urged to be unconstitutional in the particulars above suggested found its inception in the amendment of section 26, article III, of the Constitution of the State of Idaho, ratified November 6, 1934, and reading as follows:

''Section 26. POWER AND AUTHORITY OVER INTOXICATING LIQUORS.—From and after the thirty first day of December in the year 1934, the Legislature of the State of Idaho shall have full power and authority to permit, control and regulate or prohibit the manufacture, sale, keeping for sale, and transportation for sale of intoxicating liquors for beverage purposes.''

It is well settled that unless the legislature, a distinct and independent, but coordinate branch of the state government, is prohibited by the Constitution it has plenary power. (*State v. Johnson,* 50 Ida. 363, 296 Pac. 588; *State v. Nelson,* 36 Ida. 713, 213 Pac. 358; *State v. Banks,* 33 Ida. 765, 198 Pac. 472.) From the foregoing may be derived the further proposition that unless the legislative power to appoint legal

counsel as provided in section 308 of chapter 222, 1939 Session Law, *supra,* was limited by the Constitution, that is as urged by defendant,—granted to the Attorney General of the State of Idaho, the legislature had such power. It does not appear necessary to determine, and we do not therefore determine, whether the Attorney General had been granted such power by the Constitution prior to the amendment of section 26, article III. The question is rather, whether the constitutional amendment, section 26, article III, providing that "the Legislature of the State of Idaho shall have full power and authority to permit, control and regulate, or prohibit the manufacture, sale, keeping for sale, and transportation for sale, of intoxicating liquor for beverage purposes" had the effect of giving to the legislature any power to appoint legal counsel which may have been theretofore limited by the Constitution, or in other words, granted to the Attorney General.

The presumption is that words used in a Constitution are to be given the natural and popular meaning in which they are usually understood by the people who adopted them. (*Powell v. Spackman,* 7 Ida. 692, 65 Pac. 503, 54 L. R. A. 378; *Reed v. Gallet,* 50 Ida. 638, 299 Pac. 337; *Prior v. Noland,* 68 Colo. 263, 188 Pac. 729; *Cashman v. Vickers,* 69 Mont. 516, 223 Pac. 897; *State v. Moody,* 71 Mont. 473, 230 Pac. 575; *Ex parte Ming,* 42 Nev. 472, 181 Pac. 319, 6 A. L. R. 1216; *People v. Eddy,* 43 Cal. 331, 13 Am. Rep. 143; *City of Pasadena v. Railroad Com. of Cal.,* 183 Cal. 526, 192 Pac. 25, 10 A. L. R. 1425; *Shay v. Roth,* 64 Cal. App. 314, 221 Pac. 967; *State v. Harris,* 74 Or. 573, 144 Pac. 109, Ann. Cas. 1916A, 1156; *Jones v. Hoss,* 132 Or. 175, 285 Pac. 205; *State v. Lister,* 91 Wash. 9, 156 Pac. 858; *State v. Clausen,* 142 Wash. 450, 253 Pac. 805.)

The phrase particularly in question is that the legislature shall have "full power and authority to . . . . control and regulate . . . . " Funk & Wagnalls New Standard Dictionary of the English Language defines "full" as follows: "without abatement, diminution, reserve, or qualification."

"Full, means the highest state, point, or degree; complete measure; fullest or utmost extent"; (*McCrary v. McCrary,* (Tex. [Civ. App.]) 230 S. W. 187).

"Full, implying that nothing is reserved." (*State v. Marshall*, [100] Miss. [626], 56 So. 792, 796 [Ann. Cas. 1914A, 434].)

"The phrase 'full control' when unqualified, of necessity implies complete domination," (*Welsh v. Gist*, [101] Md. [606], 61 A. 665, 666).

In *Boyles v. County Court of Barbour County*, 116 W. Va. 689, 182 S. E. 868, the court considering "An act . . . . providing for state control of alcoholic liquors" said:

"The word 'control' is very comprehensive, meaning to regulate, restrain, dominate, or subdue."

The word "control" as used in a constitutional provision is considered in *Noey v. City of Saginaw*, 271 Mich. 595, 261 N. W. 88, the court saying:

"An amendment to our state Constitution (Article 16, sec. 11) was adopted in 1932, which reads in part as follows: 'The legislature may establish a liquor control commission, who, subject to statutory limitations, shall exercise complete control of the alchoholic beverage traffic within this state, including the retail sales thereof;'" . . . .

"The word 'control,' as used in the Constitution, means to regulate and govern.

" 'Courts are not to tamper with the clear and unequivocal meaning of words used in the statute. There can be no departure from the plain meaning of a statute on grounds of its unwisdom or of public policy.' (*Handy v. Township of Meridian*, 114 Mich. 454, 457, 72 N. W. 251, 253.)"

"The words 'to control' and 'to regulate,' *ex vi termini*, imply to restrain, to check, to rule and direct, And, in my judgment, the power to to do either of these implies the right to license, as a convenient and proper means to that end." (*In re Wan Yin*, 22 Fed. 701.)

The words "full power and authority to control and regulate" appear to have the meaning of the right to govern, regulate, dominate, restrain or subdue, without restraint, qualification, reserve, abatement or diminution, and implies of necessity the power and authority to do all things necessary, convenient and proper to such complete domination. Pursuant to the constitutional amendment to which reference has been made, imbedding in the legislature "full power

and authority to . . . . control and regulate . . . . intoxicating liquors for beverage purposes'' the legislature by chapter 222, 1939 Session Laws created the Idaho Liquor Board, giving it general powers and duties, and among other things providing such powers should extend to and include:

"To prescribe the qualifications of and to select . . . . legal counsel, and other personnel to conduct its business and perform its functions; . . . . to fix the compensation of all appointees and employees, assign their duties, and to discharge them."

Since the legislature has been accorded "full power and authority to control and regulate . . . . intoxicating liquors for beverage purposes'' under the Constitution as amended, neither of the two other independent and coordinate branches of the state government can deprive it of such "full power and authority . . . . to control and regulate'' and it necessarily follows that the legislature exercising such "full power and authority to control and regulate'' may adopt such means and measures, and employ such assistants and help as in its judgment are necessary to carry out and effectuate such full power of control and regulation. To say that the Attorney General, a member of the executive department of the state government, has the power to designate legal counsel and to direct and control the duties of such legal counsel, and that to deprive him of this authority is an infringement on and an invasion of the duties, rights and powers imposed upon and vested in the Attorney General of the State of Idaho, is to say that the legislature to this extent, does not have "full power and authority to control and regulate, . . . . intoxicating liquors for beverage purposes." Such does not appear to have been the intent of the people in the adoption of the amendment to the Constitution providing that the legislature shall have full power and authority to control and regulate intoxicating liquors for beverage purposes. The citizens of this state by constitutional amendment placed upon the legislature the exclusive responsibility and duty of exercising full power and authority to control and regulate intoxicating liquors for beverage purposes,— wisely or unwisely. The legislature is directly responsible to the citizens of the state in carrying out the duties and

powers placed upon it by the Constitution as amended. Neither the executive nor judicial department of the state government may encroach upon, interfere with, or curtail the power and authority vested in the legislative department by the Constitution as amended. It is a fundamental principle of constitutional law that under a Constitution such as ours, with its three departments of government, each one is fully independent in its own field. Under the constitutional amendment, *supra,* the legislature may exercise all the powers expressly conferred upon it and such incidental and implied powers and authority as may be necessary to enable it to exercise the power expressly granted, including the right to appoint legal counsel.

We recommend to the next regular session of the legislature payment of the claim of the plaintiff together with legal interest thereon from the date of presentation to the Board of of Examiners and their rejection thereof.

Givens, J., concurs.

AILSHIE, J., Concurring.—Prior to the amendment thereof, at the general election in 1934, section 26, article III of the Constitution, read as follows:

"From and after the first day of May in the year 1917, the manufacture, sale, keeping for sale, and transportation for sale of intoxicating liquors for beverage purposes are forever prohibited. The legislature shall enforce this section by all needful legislation."

The legislature at its 1933 Session (1933 Sess. Laws, p. 470), submitted the following proposed amendment to the foregoing section:

"From and after the . . . . *thirty-first* day of . . . . *December* in the year . . . . 1934, *the Legislature of the State of Idaho shall have full power and authority to permit, control and regulate or prohibit* the manufacture, sale, keeping for sale, and transportation for sale, of intoxicating liquors for beverage purposes. . . . . "

The amendment was ratified by vote of the people at the November, 1934, general election. (1935 Sess. Laws, p. 375.) So it will be seen that, while prior to November, 1934, the

only power or authority the legislature had in relation to "intoxicating liquors" was to *enforce by all* "needful legislation" the *prohibition* of "the manufacture, sale, keeping for sale, and transportation for sale" of such liquors; whereas, by the amendment, the legislature was granted "full power and authority" to authorize its sale and to regulate and control the business in every way and in all respects.

The legislature met in January, 1935, following the adoption of the foregoing constitutional amendment and passed what is known as the "Idaho Liquor Control Act" (1935 Sess. Laws, chap. 103, p. 222), and started the state in the liquor and saloon business; buying, selling and generally trafficking in intoxicating liquors. Whether the people actually so intended, is not a question or issue here.

The Liquor Control Act of 1935, *supra,* was repealed by chapters 14 and 222 of the 1939 Session Laws (pp. 30 and 465, respectively), the latter act (chap. 222), evidently intended to supplant the original act. Section 102 of the act declares that it "is passed in the exercise of the police power of the state." That is only idle verbiage since the people, by the Constitution, have specifically authorized the legislature to "permit, control and regulate" the liquor business; so the legislature was exercising *specially granted power direct from the people,* and it made no difference whether it was legislating for a purely proprietary business or as a police measure. Clearly, the outstanding and objective feature of the act is selling liquor and controlling the business, and making a profit to the state. The act of 1939 continues the state in the business, vests in the liquor board *full power and authority* to do everything that one can well imagine could be done in the liquor traffic. Among other things (as set out in Mr. Chief Justice Budge's opinion), it authorizes the board "to prescribe the qualifications of and to select clerks, accountants, agents, vendors, inspectors, servants, *legal counsel,* and other personnel to conduct its business and perform its functions."

*No one appearing in this case has questioned the power of the state to engage in the liquor traffic, under the constitutional amendment of 1934 above set out,* so we should deal

with it on the assumption that the power reposed in the legislature to provide for and authorize the traffic. There is no doubt but that the legislature intended to authorize the board to employ such legal aid and assistance as they deemed necessary in conducting and carrying on the business. Consequently, the only question in this case is: Did the *amendment to the Constitution* confer power on the legislature to authorize the employment of "legal counsel" to assist and advise the board in administering the act?

The language of the constitutional amendment is all-inclusive and contains no limitations. It is fundamental that the legislature may legislate on any subject and in any manner not prohibited by the Constitution of the state, except that it must not run counter to the federal Constitution or a valid act of Congress. (*St. Joe Improvement Co. v. Laumierster,* 19 Ida. 66, 70, 112 Pac. 683; *Ingard v. Barker,* 27 Ida. 124, 131, 147 Pac. 293; *State ex rel. Macey v. Johnson,* 50 Ida. 363, 368, 296 Pac. 588; *Idaho Gold Dredging Co. v. Balderston,* 58 Ida. 692, 722, 78 Pac. (2d) 105].)

We must bear in mind, however, that the legislature, in enacting this liquor control law, did not overlook the fact that there is an Attorney General, and so they closed the act with the following two sections:

"Section 1102. Supervisory Duty of Attorney General. If any prosecuting attorney, sheriff or local peace officer is guilty of *nonfeasance, misfeasance* or *malfeasance* in respect to his duties under this act, the attorney general of the state shall proceed against said offender in ouster or removal proceedings under Chapter 42 of Title 19 Idaho Code Annotated, or as may be otherwise provided by law.

"Section 1103. Power of Attorney General to Act as Prosecutor. The attorney general shall, in every county in the state, have the same powers as the prosecuting attorney thereof with respect to the *prosecution of criminal actions and abatement proceedings under this act.*" (Italics supplied.)

Now it is evident that the board has *no authority or power to employ an attorney to do any of the things which the legislature has provided in sections 1102 and 1103, supra, shall*

*be performed by the Attorney General.* The lawmakers did not intend to so authorize the board.

On the other hand, the people have by the Constitution conferred ''full power and authority'' on the legislature to do as it deems best in dealing with the liquor problem; and, in the exercise of that power, the legislature may in its own discretion authorize the Board to employ ''legal counsel'' as well as ''agents, vendors, inspectors . . . . and other personnel.''

If it be conceded, for present purposes, that the Constitution, as originally framed and adopted, vested the exclusive authority in the attorney general, to be ''the adviser of all the state officers'' and to represent the state in all litigation, we are, nevertheless, still confronted with this later amendment which would have to be construed in conjunction with the original; and if any conflict exists, it would be our duty to recognize and give effect to the later expression of the people on the subject covered by the amendment. (*Herrick v. Gallet,* 35 Ida. 13, 20, 204 Pac. 477.) The office of attorney general is a part of the executive and administrative branch of the government and possesses no ''judicial power,'' and therefore the increase or limitation of his authority is no interference with the powers of the courts or of the ''judicial department.'' (Sec. 13, art. V, Const.)

In concurring in the conclusion reached by Mr. Chief Justice Budge, I am limiting what I say to the specific issue before us; viz., the *power of the legislature under the liquor control amendment to the Constitution to authorize the employment of legal counsel.*

Givens, J., concurs.

MORGAN, J., Dissenting.—This action was commenced in this court for the purpose of procuring a judgment, recommending to the legislature that plaintiff's claim against the state, for money alleged to have been earned by him in the performance of services as attorney for the Idaho Liquor Board, be paid. The action is authorized by Idaho Constitution, article V, section 10, which provides:

"The Supreme Court shall have original jurisdiction to hear claims against the state, but its decision shall be merely recommendatory; no process in the nature of execution shall issue thereon; they shall be reported to the next session of the legislature for its action."

The facts on which plaintiff relies for recovery are as stated in the foregoing opinion by Chief Justice Budge. The nature of the services, performed by plaintiff for the state, is alleged in his amended complaint, as follows:

"to attend meetings of said Board and to render legal counsel, advice and assistance to it, to legally advise and assist the Manager and other officers of and for the Idaho Liquor Board and the State Liquor Dispensary, and to prepare contracts, leases and other instruments for said Board and State Liquor Dispensary."

Included in the amended answer is a general demurrer to the amended complaint.

If, as contended by plaintiff, the liquor board was authorized to employ him as its attorney, and the state was thereby rendered liable to pay him the compensation agreed on between him and the board, it is our duty to recommend to the legislature that his claim be paid.

Defendant contends it was the duty of the attorney general to render the services, without other compensation than his official salary, which plaintiff was employed by the liquor board to perform; that the portion of chapter 222, 1939 Session Laws, section 308, attempting to authorize the liquor board to employ "legal counsel," is violative of article IV, section 1 of the Constitution, which created the office of attorney general, as part of the executive department of the state government, and is an attempt to invade the constitutional rights of the attorney general and to prevent him from performing his official duties. If this contention is correct, and the furnishing of legal counsel and assistance to the liquor board is the official duty of the attorney general, imposed on him by the constitution, the legislative act attempting to authorize the employment of an attorney by the board is void, and it is our duty to sustain the demurrer to the amended complaint and dismiss the action.

This court is thoroughly committed to the doctrine, quoted from Cooley's Constitutional Limitations in *Meller v. Board etc. of Logan County*, 4 Ida. 44, 51, 35 Pac. 712, 715, that:

" 'The legislature cannot take from a constitutional officer a portion of the characteristic duties belonging to the office, and devolve them upon an office of its own creation.' "

See, also, *Givens v. Carlson*, 29 Ida. 133, 138, 157 Pac. 1120, 1122; *Wright v. Callahan*, 61 Ida. 167, 179, 99 Pac. (2d) 961, 966. In *State v. Malcom*, 39 Ida. 185, 189, 226 Pac. 1083, 1084, the rule is stated thus:

"When the constitution devolves a duty upon one officer the legislature cannot substitute another. (*Houghton v. Austin*, 47 Cal. 646; *Wilmington etc. R. Co. v. Board of Commrs.*, 72 N. C. 10.)"

The Supreme Court of California, in *Love v. Baehr*, 47 Cal. 364, announced a principle of constitutional law, which is controlling here. The first and second paragraphs of the syllabus are:

"Although the Constitution is wholly silent with respect to the duties to be performed by the Attorney-General, Secretary of State, Controller, and Treasurer, and contains no express limitation on the power of the Legislature as to the nature of the duties it may impose on these officers, yet a limitation on this power is necessarily implied, from the nature of these offices.

"Such limitation will be found in the general class of duties which the incumbents of similar offices had performed in other States, before our Constitution was adopted."

In the body of the opinion, it is said:

"From the earliest period of our history as a nation, almost every State in the Union had a Secretary of State, Controller, Treasurer, and Attorney-General; and the general nature of the duties pertaining to each were perfectly well known to the framers of our Constitution. It is clear beyond controversy, that in establishing similar offices here, the framers of that instrument had reference to the same general class of duties, which it was well known pertained to such offices elsewhere."

That rule of constitutional interpretation was recognized, and applied, in *Wright v. Callahan*, 61 Ida. 167, 99 Pac. (2d) 961, wherein we held the legislature was without power to transfer the characteristic duties of state auditor to an office of its own creation.

At the time our Constitution was written and adopted, the office of Attorney General of the Territory of Idaho existed and some of the duties thereof were prescribed by statute, among them being:

"To give his opinion in writing, without fee, to the Legislature or either House thereof, and to the Governor, the Territorial Secretary, Controller, Treasurer, the Trustees or commissioners of Territorial Institutions, when required, upon any question of law relating to their respective offices." (Rev. Stats. (1887), sec. 250.)

Since the adoption of the Constitution, the Attorney General has been the recognized head of the legal department of the state and it has been his duty, and that of his assistants, to perform such services for the state and its officials as those alleged in the amended complaint to have been performed by plaintiff for the liquor board.

The legislature of North Dakota attempted to create the office of enforcement commissioner and to make it the duty of the incumbent thereof to enforce the laws prohibiting the manufacture and sale of intoxicating liquors. In *Ex parte Corliss*, 16 N. D. 470, 114 N. W. 962, holding the law unconstitutional and void, the Supreme Court of that state said:

"We think it clear, from the language employed, that it was the intention of the legislative assembly, in the enactment of this law, to vest in the enforcement commissioner the power, whenever he deems the exercise thereof necessary, to displace the regularly elected state's attorney and sheriff in any county, so far as the enforcement of the so-called 'Prohibition Law' is concerned in such county, and appoint in their stead a deputy enforcement commissioner and a special enforcement sheriff to discharge the duties of such regularly elected officers during the pleasure of the enforcement commissioner.

"  . . . . If the legislative assembly has the power to do this, why has it not the power to provide for the appointment of a special enforcement governor, or a special enforcement attorney general, or a special enforcement court? The governor, attorney general and the judges are no more constitutional officers than are state's attorneys and sheriffs. It seems too obvious for discussion that the framers of the constitution, in providing for the election of these officers by the people, thereby reserved unto themselves the right to have the inherent functions theretofore pertaining to said offices discharged only by persons elected as therein provided. The naming of these officers amounted to an implied restriction upon legislative authority to create other and appointive officers for the discharge of such functions. If this is not true, then of what avail are the provisions of the constitution above referred to? If these constitutional offices can be stripped of a portion of the inherent functions thereof, they can be stripped of all such functions, and the same can be vested in newly created appointive officers, and the will of the framers of the constitution thereby thwarted. . . . .

"Section 173 of our constitution is relied upon as upholding this statute. This section, after enumerating the county officers and prescribing that they shall be elected by the electors of the county, further provides that their duties shall be prescribed by law; and it is argued that under the power to prescribe such duties the legislative assembly may take them away, or a portion thereof, and confer them upon other officers not elected by the people, just as is attempted to be done by the act in question. Such argument, carried to its logical and inevitable result, would lead to the monstrous doctrine that the constitution means nothing, and, notwithstanding its plain provisions, the legislative assembly may provide that the duties pertaining to all these offices shall be discharged by officers appointed in some manner prescribed by them. The act in question does not purport to prescribe the duties of these constitutional officers, but it attempts to vest in other persons not elected the power to perform such duties, and to this extent supplant these constitutional officers. Such legislation, in our opinion, cannot be sustained. It strikes a blow at the very foundation principles of our form

of government. During the early history of this state, Chief Justice Corliss, in *State ex rel. Faussett v. Harris*, 1 N. D. 194, 45 N. W. 1102, recognized the distinction in this respect between constitutional offices and those created by the legislative assembly. Speaking of the latter kind of office, he says: 'The office is not imbedded in the constitution, as is the case with respect to the offices named in section 173 of the constitution. These are constitutional offices. The other offices, including that of county assessor, are offices which, under the express provisions of section 173, the legislature may abolish by creating other offices to take their place.' In that case the court had under consideration the power of the legislature to abolish the old office of county assessor and to confer the duties upon district assessors, and the court held that, as the office was of legislative creation and therefore not 'imbedded in the constitution,' the act in question was valid.

"If the offices mentioned in section 173, which includes those of state's attorney and sheriff, 'are imbedded in the constitution,' it inevitably follows that they cannot be stripped by the legislature of the important duties inherently connected therewith, for if this can be done, then these offices were 'imbedded in the constitution' for no purpose. We do not deny the power of the legislature to prescribe duties for these officers, which power carries with it by implication the right to change such duties from time to time as the public welfare may demand; but we deny its power to strip such offices, even temporarily, of a portion of their inherent functions and transfer them to officers appointed by central authority. This, as we view it, is a plain violation of the constitution, and is subversive of the obvious intent of its framers to reserve to the people of each county the right, through their elected officials, to enforce the criminal laws of the state, as well as to perform other functions of government by them so long performed and so well understood."

The North Dakota court quoted the Supreme Court of Wisconsin, in *State v. Hastings*, 10 Wis. 525, 532, as follows: " 'This rule of construction extends to every part of the instrument, [constitution] and if a violation of it is allowed in the case of the auditor, it is difficult to see why it should

not be in the case of any other officer or department. Thus, the legislature might with equal propriety create new courts of justice, usurping and exercising the same power and jurisdiction as those established by the people, and a new executive, to correct the mistakes and control the action of the one chosen by them. It seems to us clear that the legislature could do neither, and that so much of the act under consideration as attempts to transfer to the so-called ''comptroller'' the functions of auditor, and to clothe him with authority to control or reverse the acts of that officer, is unconstitutional and void.' ''

We now come to a consideration of the amendment to the Constitution, adopted at the general election held November 6, 1934, which is discussed in the foregoing opinions of Chief Justice Budge and Justice Ailshie. In doing so we should bear in mind the people of Idaho were attempting to *amend* their Constitution—*not to wreck it*.

The legislative session of 1915, by Senate Joint Resolution No. 1, proposed an amendment to the Constitution, which was adopted at the general election held November 7, 1916, providing:

''From and after the first day of May in the year 1917, the manufacture, sale, keeping for sale, and transportation for sale of intoxicating liquors for beverage purposes are forever prohibited. The legislature shall enforce this section by all needful legislation.''

Prior to the adoption of that amendment the legislature had, in conformity to the Constitution, passed laws, from time to time, for the regulation, control and prohibition, of the manufacture, sale, keeping for sale, and transportation for sale of intoxicating liquors for beverage purposes.

Prohibition, as provided for by that constitutional amendment, did not prove to be satisfactory to a majority of Idaho voters, and their purpose in adopting the constitutional amendment, approved November 6, 1934, now before us, was to again invest the legislature with power and authority to permit, control and regulate or prohibit the manufacture, sale, keeping for sale, and transportation for sale, of intoxicating liquors for beverage purposes. In order to accomplish

this the amendment, proposed in 1915 and ratified in 1916, was amended as follows: [Omitted portions of the amended section are indicated by asterisks, and added portions are indicated by italics.]

"From and after the * * * * *thirty-first* day of * * * * *December* in the year * * * * *1934, the Legislature of the State of Idaho shall have full power and authority to permit, control and regulate or prohibit* the manufacture, sale, keeping for sale, and transportation for sale, of intoxicating liquors for beverage purposes. * * * * "

The amendment attracted a great deal of attention and was thoroughly discussed before it was voted on. The vote was 85,469 for the amendment and 53,788 against it. The question propounded to the voters was:

"Shall Section 26 of Article III of the Constitution of the State of Idaho be amended so as to provide that the Legislature of the State of Idaho, from and after the thirty-first day of December in the year 1934, shall have full power and authority to permit, control and regulate, or prohibit, the manufacture, sale, keeping for sale, and transportation for sale of intoxicating liquors for beverage purposes."

It will be observed that neither in the question propounded to the voters, nor in the amendment, is mention made, or intention suggested, of authorizing the legislature to alter, or in any manner change or otherwise interfere with, the characteristic, constitutional duties of the attorney general. It is safe to say that the interpretation placed on the amendment by the majority of this court was never thought of until long after its adoption.

In *Boise-Payette Co. v. School Dist. No. 1,* 46 Ida. 403, 411, 268 Pac. 26, 28, we said:

"The test of the constitutionality of an act is not what is done thereunder in any particular instance, but what may be done under it. (6 R. C. L., p. 82, sec. 80; 12 C. J., p. 786, sec. 219.) "

See, also, *State Water Conservation Board v. Enking,* 56 Ida. 722, 732, 58 Pac. (2d) 779, 783; *Idaho Gold Dredg. Co. v. Balderston,* 58 Ida. 692, 724, 78 Pac. (2d) 105, 120.

With that rule in mind, let us see what the legislature may do to the constitutional structure of Idaho, by legisla-

tion involving the liquor traffic, if we persist in holding it has full authority to control and regulate intoxicating liquors, under the Constitution as amended; that it even has authority to confer on others powers which, prior to the amendment, belonged exclusively to constitutional officers. If the court is right in holding the characteristic powers and duties of the Attorney General to counsel, advise and assist the officers of the state in legal matters, having to do with intoxicating liquors, may be taken from him by the legislature and be conferred on someone else, it may, in all matters pertaining to the liquor traffic, deprive other constitutional officers of their powers. It may provide a treasurer to have charge of public funds arising from the liquor traffic; a board of examiners to allow or disallow claims against the state arising out of such traffic; it may designate a governor of the liquor traffic and create a judiciary to interpret the laws pertaining thereto.

This constitutional amendment not only provides that the legislature shall have power to regulate and control the liquor traffic, but that it shall have power to prohibit it. Pursuant to the amendment, as interpreted in this case, the legislature has full power and authority to permit, control and regulate or prohibit the manufacture, sale, keeping for sale, and transportation for sale, of intoxicating liquors for beverage purposes, and that this power and authority are unlimited, regardless of what other parts of the Constitution may say to the contrary. If the court is right that the powers of the Attorney General, as applied to the liquor traffic, may be taken from him, it follows that the legislature may enact a law prohibiting traffic in intoxicating liquors and set up a new governmental structure to enforce it, and, in so doing, will not violate the rights of any constitutional board or officer.

In 16 C. J. S., p. 50, the following rule of constitutional interpretation appears:

"A constitution, or provision thereof, should receive a reasonable and practical interpretation in accord with common sense."

In support of that text, among many other authorities, are: *Reed v. Gallet*, 50 Ida. 638, 299 Pac. 337; *Bannock County v.*

*Citizens' B. & T. Co.*, 53 Ida. 159, 22 Pac. (2d) 674; *Lloyd Corporation v. Bannock County*, 53 Ida. 478, 25 Pac. (2d) 217; *Oregon Short Line R. Co. v. Pfost*, 53 Ida. 559, 27 Pac. (2d) 877.

The amendment, approved November 6, 1934, should be given an interpretation which will make it harmonize with—not be destructive of, other portions of the Constitution.

The demurrer to the amended complaint should be sustained and the action should be dismissed.

HOLDEN, J., Dissenting.—The constitutional amendment under consideration provides:

"the legislature of the State of Idaho shall have full power and authority to permit, control and regulate or prohibit the manufacture, sale, keeping for sale, and transportation for sale, of intoxicating liquors for beverage purposes . . . . "

It will be noted the amendment provides the legislature "shall have full power and authority to permit, control and regulate" the sale of intoxicating liquors. An examination of the majority opinion discloses that, in discussing and determining the meaning of the amendment, the majority completely eliminates and ignores the word *permit*. No attempt is made to define that word as it is used in the amendment in connection with the words "control and regulate"; that is to say, no attempt is made to construe the phrase "permit, control and regulate." If the court can eliminate one word from a constitutional amendment, it, of course, could, if it chose to do so, eliminate any number of words and by the process of elimination give an amendment an entirely different meaning from that intended.

But what does the amendment mean, construed as it was written and ratified? That, in turn, involves the meaning of the word "permit," as used in the phrase "permit, control and regulate." Funk & Wagnalls New Standard Dictionary defines the word permit thus:

"To grant leave to by express consent or authorization; empower expressly; authorize; as his license permits him to practice medicine."

"The presumption is that words in a constitution are to be given the natural and popular meaning in which they are

usually understood by the people who adopted them," as held in the majority opinion. Applying that rule, then, the presumption is that the word "permit" was used in its natural and popular sense, for instance, to license one to practice medicine, or, as in this case, to license one to engage in the business of selling intoxicating liquor. When, therefore, the word "permit" is used in connection with the words "control and regulate," the phrase must mean that the legislature shall have full power to permit, in other words, to license, and having provided for that, to control and regulate the sale of intoxicating liquors by appropriate legislation. Nowhere in the amendment is there the slightest hint it was the intention to authorize the legislature to put the State of Idaho into the business of selling intoxicating liquors.

The majority cite and rely upon *McCrary v. McCrary,* (Tex. Civ. App.) 230 S. W. 187; *State v. Marshall,* 100 Miss. 626, 56 So. 792, Ann. Cas. 1914A, 434; *Welsh v. Gist,* 101 Md. 606, 61 Atl. 665; *Noey v. City of Saginaw,* 271 Mich. 595, 261 N. W. 88; *In re Wan Yin,* 22 Fed. 701, 702. None of these cases, except *Noey v. City of Saginaw,* involved a constitutional question. *Noey v. City of Saginaw, supra,* involved the interpretation of an amendment to the Constitution of Michigan reading: "The legislature may by law establish a liquor control commission, who, subject to statutory limitations, shall exercise complete control of the alcoholic beverage traffic within this state, including the retail sales thereof."

In that case (*Noey v. City of Saginaw*), notwithstanding the fact the amendment authorized the legislature to establish a "liquor control commission" which should "exercise complete control of the alcoholic beverage traffic within this state," the Supreme Court of Michigan did not construe the Michigan amendment to mean the legislature of that state could create a "liquor control commission" and authorize the commission to engage in the liquor business, nor did the Michigan legislature attempt to do that. It provided for the licensing of the sale of intoxicating liquor by the "liquor control commission" which, I insist, is the only thing the legislature of this state could do (unless it prohibited the sale altogether) under our constitutional amendment.

Furthermore, in *Re Wan Yin, supra,* cited and relied upon by the majority, that court defines the words "control and regulate" exactly and contrary to what the majority hold those words to mean. I quote:

"The words 'to control' and 'to regulate,' *ex vi termini,* imply to restrain, to check, to rule and direct. And, in my judgment, *the power to do either of these implies the right to license, as a convenient and proper means to that end"* (italics mine).

The majority uphold the constitutionality of subdivision "b" of section 308, chapter 222, 1939 Session Laws, pp. 465, 470. Under that subdivision the state liquor board may, as frankly conceded by counsel for plaintiff, employ an attorney and pay him as much or more than the salary of our Attorney General, which, at present, is $4,000 per annum. It was further conceded by such counsel that the state liquor board may, if the statute be held constitutional, employ as many attorneys, and pay them whatever compensation, it chooses. It follows, then, that the state liquor board has the power (by reason of the construction given the amendment by the majority), if it cares to exercise it, to set up a counterpart of the Attorney General's office, for instance, a solicitor general (to distinguish him from the Attorney General), first assistant, second assistant, and so on, and pay them (because the state liquor board has ample funds at its disposal) a salary as high as, or higher than, the Attorney General and his assistants receive. Surely, the people of this state had no thought, when they ratified the amendment, that it would ever be given an interpretation which would make such a thing possible.

It is my view that under the amendment in question the power of the legislature to legislate is limited either to prohibiting the sale of intoxicating liquors altogether, or to providing for the licensing of the sale of intoxicating liquors by appropriate legislation. Hence, the entire statute is unconstitutional in that it authorizes the state liquor board to engage in the business of selling intoxicating liquors, instead of providing for the licensing of the sale of intoxicating liquors by the board or absolutely prohibiting the sale of such liquors. I, therefore, dissent from the majority opinion.